Commonwealth *v.* Alwine, Appellant.

Submitted March 13, 1972.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused January 4, 1973.

*Richard L. McCandless,* and *Coulter, Gilchrist, Dillon & McCandless,* for appellant.

*Robert F. Hawk,* Assistant District Attorney, and *John H. Brydon,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 4, 1972:

On July 13, 1959, Richard Wayne Alwine was convicted by a jury in Butler County of robbery and of murder in the first degree.   On the murder conviction he was sentenced by the court to life imprisonment as the jury's verdict directed, and on the robbery convic-

tion a sentence of 10 to 20 years imprisonment was imposed. Appeals were not then entered. However, on January 2, 1968, Alwine filed a petition seeking post-conviction relief under the Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. 1180-1, and, after an evidentiary hearing, the trial court concluded Alwine had not effectively waived his right to appeal, so an order was entered permitting the filing of post-trial motions as if timely filed. Said motions were filed, and subsequently dismissed. This appeal was then entered from the judgment of sentence imposed on the murder conviction. An appeal was not taken from the judgment entered on the robbery conviction.

It is not disputed the trial evidence was sufficient to warrant a finding of guilt of murder in the first degree, and an examination of the record readily manifests why this issue is not pressed. The record demonstrates the Commonwealth's evidence was ample to establish beyond a reasonable doubt that, while perpetrating a robbery of a grocery store, Alwine fatally stabbed the proprietor. That Alwine committed the crimes was not denied at trial, but the defense attempted unsuccessfully to persuade the jury he was legally insane at the time involved.

The Commonwealth's trial evidence included an incriminating statement made by Alwine during police custody. It is claimed this statement was obtained under conditions which rendered it "involuntary" and made its evidentiary use at trial violative of due process. This issue was explored and decided against Alwine in the 1968 post-conviction proceedings and, after a careful study of the entire record, we conclude the trial court's ruling was correct.

The robbery and killing occurred between 8 and 9 p.m. on September 24, 1958. About 1 p.m. on the following day, Alwine was taken into police custody and

arrived at police headquarters about 1:30 p.m. Before any questioning began, he spontaneously said: "Do what you want with me. I done it. Nobody cares about me." From then until late in the afternoon, he was questioned about the details of the crimes after which he made the statement now challenged. It was initially recorded in longhand by a police detective and then transposed into a typewritten statement. At one point before the statement was obtained, the questioning was interrupted for at least a half-hour during which period Alwine and his father were alone together.

At the time Alwine was eighteen years of age, had an I.Q. of 85, and a history of prior emotional disturbances. Additionally, he was not warned of his constitutional rights as now required by *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). On the other hand, the record is convincing he talked freely with the police from the beginning and admitted his guilt without urging or extensive questioning. Moreover, his trial testimony clearly evidences he possessed a mind fully capable of making knowing decisions. Under all the circumstances, the question of whether the statement was freely given was for the jury. Cf. *Commonwealth v. Darden,* 441 Pa. 41, 271 A. 2d 257 (1970) ; and, *Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A. 2d 434 (1968).

It is also urged that evidentiary use of the statement should have been denied as a matter of law because it resulted from police questioning which occurred after Alwine indicated he wanted the assistance of an attorney. As to this, the record discloses the following:

Alwine was taken into police custody in front of his residence on the basis of a warrant previously issued by a magistrate. He was immediately escorted

into his home by the arresting officers, and he and his father were informed of the reason for the arrest. Alwine then asked his father for an attorney. The father replied, "definitely see how this comes out first." Later on in the afternoon *after* the challenged statement *was completed and recorded,* Alwine refused to sign it until he consulted an attorney.

Assuming *Miranda v. Arizona,* supra, or *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964), would preclude any police questioning in the absence of an attorney in view of Alwine's indication to his father that he wanted legal assistance, since his trial commenced many years prior to the effective date of these decisions they do not control. In 1958, even the denial of a request to contact counsel before police questioning commenced was not an infringement of constitutional rights. Cf. *Crooker v. California,* 357 U.S. 433, 78 S. Ct. 1287 (1958); *Cicenia v. La Gay,* 357 U.S. 504, 78 S. Ct. 1297 (1958).

The remaining asserted assignments of error have been given careful consideration and are likewise found to be without merit.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

I cannot agree with the majority's determinations that Alwine's incriminating statements were voluntarily made and that it was not a violation of appellant's constitutional rights to deny his request for counsel prior to police questioning. The introduction of the statement obtained after request for counsel constitutes, in my view, a denial of that due process of law guaranteed Alwine by the Fourteenth Amendment.

As noted by the majority, at the time of his arrest appellant—who was 18 years old, had an I.Q. in the lower 10% of all persons, and had a long history of

emotional disturbances—immediately requested an attorney. However, this request was not answered and appellant was taken to the police station and questioned by several police officers for approximately three and one-half hours.[1] The alleged confession was not obtained until after appellant had dinner and spoke with his father. Appellant refused to sign the statement since the police again refused to answer his request to consult with an attorney.

I feel that appellant's mental capacity, his request to have counsel, the extensive questioning, and the fact that he was not advised of his right to remain silent,[2] all go to the issue of the voluntariness of the statement. A confession obtained under such circumstances is constitutionally defective. As this Court has previously recognized, "[t]he questions in the voluntariness area have passed beyond the physical coercion stage to the much more difficult area of psychological coercion. In this area, particularly, a close analysis of all the surrounding circumstances is necessary." *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 149, 239 A. 2d 426, 430 (1968) (footnote omitted).[3]

As authority for its conclusion that in 1968 a denial of a request to consult with an attorney before being interrogated was not a due process violation the majority relies on *Crooker v. California,* 357 U.S. 433

---

[1] No statement was given during this period.

[2] Although the law in effect at the time of Alwine's arrest did not require the police to warn him of his right to remain silent or to advise him that anything he said could be used against him in a court of law, these are factors to be considered in the determination of whether or not the statement was voluntary. *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968).

[3] In *Butler,* as in the instant case, we were faced with the problem of determining what is meant by a "voluntary" confession. *Miranda v. Arizona,* 384 U.S. 436 (1966) and *Escobedo v. Illinois,* 378 U.S. 478 (1964) were likewise inapplicable in *Butler.*

(1958). Significantly, the Supreme Court in *Crooker* found that *under the particular circumstances of the case in issue* there was no violation of due process in the state's refusal of a request to engage counsel. It is apparent that the surrounding circumstances involved in *Crooker* are readily distinguishable from those in the instant case. In *Crooker* the petitioner was 31 years old and a college graduate who had attended the first year of law school where he had studied criminal law. In addition, he was told of his right to remain silent and when asked to take a lie detector test, he informed the operator that the results of such a test would not be admissible at trial absent a stipulation by the parties.

In contrast, the circumstances of this case reveal that appellant had a low I.Q., little formal education and was not advised of his right to remain silent. Applying the rationale of the Supreme Court in *Crooker*, which mandates a review of all the circumstances involved, the record indicates that this particular appellant's rights were violated. Even if the incriminating statements could be deemed "voluntary", it was prejudicially unfair to conduct a formal interrogation after refusing a request for counsel, and then to admit into evidence the resulting statement. Alwine, a person of limited mental capacity, expressly desired the protection of counsel during questioning and should not have been denied that right.

In emphasizing the need for a lawyer during pre-trial investigation to preserve an accused's constitutional rights Mr. Justice DOUGLAS stated: "The third degree flourishes only in secrecy. One who feels the need of a lawyer and asks for one is asking for some protection which the law can give him against a coerced confession. No matter what care is taken innocent people are convicted of crimes they did not commit. We

should not lower the barriers and deny the accused any procedural safeguard against coercive police practices. The trial of the issue of coercion is seldom helpful. Law officers usually testify one way, the accused another. The citizen who has been the victim of these secret inquisitions has little chance to prove coercion. The mischief and abuse of the third degree will continue as long as an accused can be denied the right to counsel at this the most critical period of his ordeal." 357 U.S. at 443-44 (dissenting opinion) (citations omitted) (footnotes omitted).

Accordingly, I believe that appellant's constitutional rights have been violated and therefore I would reverse the judgment of sentence and grant a new trial.

Mr. Justice ROBERTS and Mr. Justice MANDERINO join in this dissent.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I concur with the reasoning of the majority except for its use of the constitutionally impermissible nonretroactive doctrine. My reasons are stated in *Commonwealth v. Leamer,* 449 Pa. 76, 295 A. 2d 272 (1972).