466 A.2d 1356

**COMMONWEALTH of Pennsylvania**

v.

**Willis Livey MORRIS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 28, 1983.

Filed Oct. 7, 1983.

Petition for Allowance of Appeal Denied Feb. 2, 1984.

142

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before ROWLEY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

On October 17, 1980, appellant, Willis Livey Morris, was found guilty of rape,[1] simple assault,[2] and terroristic

1. 18 Pa.C.S.A. § 3121.

2. 18 Pa.C.S.A. § 2701.

threats.[3] Post-trial motions were filed and denied. Appellant was sentenced to a period of two to ten years imprisonment on the rape charge. Sentence was suspended on the remaining charges. This appeal followed. We affirm.

Appellant raises five contentions of error on this appeal. They include:

 I. The trial court erred in denying appellant's motion to suppress the victim's identification testimony.

 II. The trial court erred in denying appellant the opportunity to impeach two Commonwealth witnesses with prior inconsistent statements.

 III. The trial court erred in refusing to give a *Sexton* charge to the jury.

 IV. Trial counsel was ineffective for failing to request a missing witness charge.

 V. The trial court erred and abused its discretion by interrupting sua sponte the closing argument of defense counsel and instructing the jury that the argument was unprofessional and designed to appeal to an improper bias.

The events leading up to appellant's arrest are as follows:

On May 23, 1980, at 4:45 a.m., 16 year old Margaret Peacock left her home on foot and proceeded to a friend's house in order to depart on a field trip with her high school band. As she neared the Peabody High School building, in the Shadyside area of Pittsburgh, Margaret observed the presence of someone walking behind her on the same street. She crossed the street and the person gradually drew closer to her. The pursuer broke into a run, and although Margaret began to run she was caught. The pursuer, a man, overpowered her and raped her and at the conclusion of the assault was seen by the victim to run toward East Liberty Boulevard. Jan Fisher, a resident of the neighborhood and an acquaintance of Margaret, was preparing for a fishing trip when he heard noise of the scuffle and left his house to investigate. Mr. Fisher assisted Margaret while Mr. Fish-

---

3. 18 Pa.C.S.A. § 2706.

er's wife called the police. Margaret described her assailant to the police as a black male wearing a light brown leather jacket, tan pants and a knit cap, in his late 20's or early 30's, five feet ten inches to six feet tall, average build, and having terrible body odor. This description was broadcast over the police radio system. Two officers in a police van on their way to the scene of the crime observed a man fitting the broadcast description proceeding away from Peabody High School in an erratic manner, with sudden changes of gait and direction. The man was Willis Livey Morris. When the officers stopped to question him they noticed he was perspiring and gave off a strong body odor. Mr. Morris was wearing a tan cloth jacket, grey or light brown pants and a knit hat. The officers in the van asked appellant for identification, searched him, and then transported appellant to the victim. Margaret immediately identified him as the attacker.

Appellant's first contention of error concerns the trial court's denial of appellant's motion to suppress the victim's on-the-scene-identification. A pre-trial suppression hearing was held on this issue and the court found that the officers who stopped appellant had the authority to transport him to the victim irrespective of appellant's consent, and that appellant's arrest was made at the time of his confrontation with the victim. Appellant argues that he was under arrest before he was shown to the victim and that his arrest was illegal.

At the time of the suppression hearing, the law in this Commonwealth permitted as an intermediate response the transportation without consent of a suspect to the scene of a crime for investigatory purposes, *Commonwealth v. Lovette*, 271 Pa.Super. 250, 413 A.2d 390 (1979). In cases such as this one, the law now requires probable cause to arrest before a suspect can be transported to the scene. *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982). Although in the instant case there is contradictory testimony concerning appellant's consent to being transported to the victim, we find that regardless of whether

consent was given, the officers who stopped appellant had probable cause to arrest. In determining whether probable cause exists, "[t]he crucial test is whether there were facts available which would justify a person of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator." *Commonwealth v. Wilder*, 461 Pa. 597, 600, 337 A.2d 564, 566 (1975). Here, appellant was in the vicinity of the crime scene and was behaving suspiciously as if he were about to run away upon seeing the police van. (N.T. October 15–17, 1980, p. 149). Appellant matched the general physical description broadcast only minutes earlier, and was wearing a knit cap, tan jacket and light colored pants. When the officers approached appellant, they noticed he was perspiring heavily and had a strong body odor, just as the victim had indicated. "All circumstances surrounding the apprehension can be taken into account in determining probable cause." *Wilder, supra.* In the instant case, it is clear from the facts that probable cause existed to arrest appellant before his ultimate identification by the victim.

█ Appellant also contends that the suggestive nature of the on-scene and preliminary hearing show ups gave rise to a substantial likelihood of misidentification and should have been suppressed. Before identifying the appellant, Ms. Peacock was sitting in the police cruiser and overheard a radio conversation between the arresting officers and the officers present at the scene. The content of this conversation reiterated the description given the victim and caused her to believe that the officers thought they had caught her assailant. In *Commonwealth v. Aaron*, 255 Pa.Super. 289, 386 A.2d 1006 (1978), this Court held that the proximity in time between the act and the identification weigh heavily on the probative value of the one-on-one confrontation. We have also held that such confrontations which occur on the scene soon after the commission of a crime while the image is still fresh in the victim's mind may offset the suggestive aspects. *See Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1980). Here, Ms. Peacock, observed the

appellant for approximately 10 minutes under a street light which was 10 to 20 feet away. The fact that she knew in advance that the police had picked up the man who they believed was the assailant is no more suggestive a factor than in any on-the-scene confrontation.

Appellant complains that there should have been a line-up prior to the preliminary hearing, and that the lack of a lineup increased the possibility of misidentification. However, as the Commonwealth points out the record shows that a lineup was not requested by appellant until moments before the trial. (N.T. October 15–17, 1980, p. 326). The suggestiveness of the preliminary hearing confrontation is only a factor to be considered in determining the reliability of the identification evidence. *Commonwealth v. Sexton,* 485 Pa. 17, 22, 400 A.2d 1289, 1292 (1979). "[T]he key in determining the admissibility of such evidence is not simply the suggestiveness of the circumstances surrounding the identification but rather the likelihood of misidentification." *Id.,* 485 Pa. at 22, 400 A.2d at 1291. (quoting *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)) Because there is little, if any, likelihood of misidentification present in the original confrontation between appellant and the victim, we are unpersuaded by appellant's argument that the preliminary hearing identification was unconstitutional. *See generally Commonwealth v. Sexton, supra.*

Appellant's second contention of error regards the trial court's denial of appellant's request that a tape be played at trial of the radio conversation between the police officers who were with the victim and the officers who had stopped appellant. Appellant argues that the tape may have impeached the police officers' testimony as to the sequence of events surrounding appellant's arrest and subsequent identification at the scene. Aside from the fact that the trial judge considered the tape to be of very poor quality, difficult to hear and understand, the court was of the opinion that the tape had no relevance to trial issues. The trial judge had listened to the tape at the suppression hearing.

▆ The Commonwealth argues that the tape could not have impeached the police officers' testimony regarding the sequence of events leading up to the identification of appellant by the victim because the officers testified at trial that they were unsure of the exact sequence of events. We agree with the Commonwealth. Although the victim may have been questioned at the scene by the police to get a more accurate description of the assailant, so that the officers who were in the process of stopping appellant would have a more specific description to act on, the officers who testified at trial repeatedly stated that they could not recall the exact sequence of descriptions given over the radio and questions asked of the victim. (N.T. October 15–17, 1980, pp. 100, 101, 107, 108, 137, 138). A party has the right to impeach the credibility of an adverse witness by introducing evidence that the witness made statements inconsistent with his testimony at trial, see *Commonwealth v. Brown*, 302 Pa.Super. 391, 448 A.2d 1097 (1982). In this case, the tape offered into evidence for impeachment purpose would not have impeached the witnesses' testimony. The trial court properly refused defense counsel's request to play the tape.

▆ Appellant's third argument is that the trial court erred in refusing to give a *Sexton* charge to the jury concerning the failure of the Commonwealth to afford appellant a lineup. In *Commonwealth v. Sexton, supra,* the defendant, a minor, was identified for the first time at a pre-trial certification hearing where appellant was the only young black male in the room. Although a timely request for a pre-hearing lineup was made, the request was refused. The Supreme Court ruled that during a new trial the harm from the highly suggestive confrontation at the certification hearing could be cured if the finder of fact is advised that the defendant had been denied the opportunity for a more objective identification and that the subsequent less reliable identification could be viewed with caution. *Id.*, 485 Pa. at 24, 400 A.2d at 1293. The court did not announce a *per se*

rule that all in-court confrontations are inadmissable or that a pre-trial pre-hearing lineup is mandatory in all cases. *Id.*

In the instant case, we are convinced that the identification evidence against appellant was properly admitted and that the court did not err in refusing to give a *Sexton* charge to the jury. Aside from the fact that appellant's request for a lineup made only moments before trial, was untimely, *see Commonwealth v. Rose,* 265 Pa.Super. 159, 401 A.2d 1148 (1979), our reasons for disposing of appellant's first contention of error adequately demonstrate that the original identification of appellant was not made in an impermissibly suggestive manner.

▮▮▮ Appellant next complains that trial counsel was ineffective for failing to request a missing witness charge because of the absence at trial of Police Officer Stephany, one of the arresting officers. This claim lacks merit. A missing witness charge will not be given when the witness is equally available to both parties. Here, Officer Stephany, who testified a week earlier at the suppression hearing, was amenable to subpoena process by the defense. Counsel will not be deemed ineffective for failing to take a futile course of action. *Commonwealth v. Rainey,* 282 Pa.Super. 15, 422 A.2d 652 (1980). Although there were several minor discrepancies between Officer Stephany's testimony at the suppression hearing and the trial testimony of Officer English, the other arresting officer, it is this Court's opinion that the testimony of Officer Stephany would have been merely cumulative of the Commonwealth's other witnesses at trial.

Appellant's final contention is also lacking in merit. Defense counsel made the following remarks during his closing argument:

"Let's assume for the moment that you have been sent out to deliberate this case, come back with a verdict of guilty on behalf of the Defendant. Feeling that your duty has been discharged under very difficult circumstances, you go home tonight. You finally are able to discuss the case with your family. You discuss with

them, tell them what happened, crazy lawyers did, what the Judge did to admonish the lawyers, what evidence showed, how this was lying or that was lying or this one was telling the truth. You get all of this discussion out. Finally time comes for you to go to bed, time to go to sleep. Sleep won't come because you are thinking about the case. Facts are running through your mind.... Why did this witness say that? Why didn't this witness say something else? What about that fact? Now, those facts—" (N.T. October 15–17, 1980, p. 290)

The trial court interrupted defense counsel and admonished counsel at sidebar. The trial judge then made the following statement to the jury:

"I think he was making an unprofessional and improper argument to you in his efforts to illustrate for you what in his opinion he thinks reasonable doubt is. His illustration could only serve to appeal to something in you that would make you uncomfortable with having the experience of responsibility of being involved in this case.... (Y)our deliberations should be of serious character that would be calculated only to make you calm and comfortable and satisfied with whatever decision it is you may come to, without any appeal or scare tactic trying to imply that if you do find this Defendant guilty in this case, you are going to be troubled with sleepless nights from now on." (N.T. October 15–17, 1980, pp. 293, 294).

 The remarks by the court did not prejudice the appellant in such a manner so as to deprive him of a fair trial. It is obvious that the trial court's remarks to the jury were critical of defense counsel and not directed at appellant. *See Commonwealth v. Humphreys,* 267 Pa.Super. 318, 406 A.2d 1060 (1979). As the Commonwealth points out, it is the responsibility of the court to insure that final argument to the jury is kept within proper, accepted bounds. *See* The ABA Standards for Criminal Justice, The Defense Function, § 7.8(e) (Approved Draft, 1979). Under the aforementioned standards provided by the American Bar Association, § 7.8(d) provides:

"A Lawyer should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict."

In the instant case, we find that the trial court's actions were quite proper.

For the above stated reasons, we affirm the judgment of sentence.