540 A.2d 297

**COMMONWEALTH of Pennsylvania**

v.

**Joseph BELLS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 10, 1988.

Filed April 6, 1988.

Robert S. Robbins, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and TAMILIA and HESTER, JJ.

TAMILIA, Judge:

Appellant was convicted following trial by jury of the following crimes and sentenced to imprisonment as stated: involuntary deviate sexual intercourse (7 to 15 years); kidnapping (consecutive 2 to 5 years); robbery (consecutive 1 to 3 years); and possession of an instrument of crime (concurrent 1 to 3 years). Convictions for theft and false imprisonment merged. Appellant filed post-trial motions which were subsequently argued and denied by the trial court. Appellant raises several issues in this appeal of his convictions and his sentence for involuntary deviate sexual

intercourse. These issues can summarily be stated as follows: 1) whether his arrest was based upon probable cause; 2) whether his trial counsel was ineffective; and 3) whether his sentence for involuntary deviate sexual intercourse was excessive.

On August 25, 1986 at approximately 4:30 a.m., Laura Smith fell asleep behind the wheel of her parked car after dropping off a friend in the Germantown section of Philadelphia. Appellant walked past the victim's car and seeing her asleep, entered the car on the driver's side, pushing the victim over. Appellant held a knife in his hand and demanded jewelry and money. After giving appellant what she had, the victim begged him to let her go. When she reached for the door, appellant poked her with his knife and warned her he did not want to hurt her but he would. He also told Miss Smith he had a gun in the duffle bag which he was carrying. Appellant then drove the car to the end of the block where he ordered the victim into the back seat. There he forced her at knife point to perform oral and anal intercourse. Appellant then climbed back into the front seat and ordered the victim to join him because they were going for a drive. He drove around Germantown while he talked with her about the possibility of them seeing each other as "boyfriend and girlfriend." When Miss Smith was unresponsive to appellant's conversation, appellant threatened to sexually assault her again. He asked her to meet him that night at the Baby Grand Bar on Germantown Avenue at 11:00 p.m. He drove by the bar several times to show her where it was and forced her to promise to meet him there. When appellant finally got out of the victim's car, he hugged and kissed her and demanded that she reciprocate. The whole ordeal lasted approximately two hours.

The victim described her attacker to police as a black man with facial hair, a dark complexion, slightly over six feet tall, approximately 170 pounds, with dark eyes, dark clothing, and approximately twenty-four or twenty-five years old. He also wore his long hair combed straight up and had

very strong body odor. The victim agreed with the police to park her car in front of the Baby Grand Bar at 11:00 that night while police staked out the area. She was to turn off her headlights as a signal to the police officers whenever she saw the appellant. During the stake-out several black men walked past her car as the officers watched from unmarked vehicles but she never gave the signal. Finally, appellant, who fit the description, was walking toward the bar just before 11:00 p.m. As he approached the bar he looked in the direction of the police vehicle and then turned onto a sidestreet before reaching the bar. The victim did not give the signal this time either. Two officers, however, believing the appellant to be the attacker based on the victim's previous description, followed the appellant in their car for a short distance before stopping alongside him. They got out of their car and identified themselves as police officers. As they approached appellant they immediately smelled a strong odor and noticed a bulge under appellant's shirt. One of the officers conducted a pat-down search which uncovered a knife-like tool fitting the description given by Miss Smith. A further pat down uncovered the rings which had been stolen from the victim. Miss Smith positively identified the knife and rings. The next month she viewed a lineup and identified appellant as her attacker despite the fact that at this time his hair was closely cropped and he had shaved.

■ Appellant's first contention is that the police lacked probable cause to arrest him and therefore, the evidence which resulted from this unlawful arrest should have been suppressed. We find the officers did have probable cause to arrest appellant; thus, there is no need to address the suppression issue. In determining the existence of probable cause, " '[t]he crucial test is whether there were facts available which would justify a person of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator.' " *Commonwealth v. Morris*, 320 Pa.Super. 139, 145, 466 A.2d 1356, 1359 (1983), quoting *Commonwealth v. Wilder*, 461

Pa. 597, 600, 337 A.2d 564, 566 (1975). Using this test, we conclude Miss Smith provided the police officers with sufficient facts to warrant the officers' belief that appellant was the one who assaulted her. The appellant was in the precise location where he had instructed the victim to meet him at the designated time. The victim gave police a detailed physical description of her attacker as well as a description of the unusual knife he carried. The description was not of the kind which would apply to a large number of people; it was detailed enough to provide a substantial basis for the police to pick out appellant from the many black men who were in the area of the Baby Grand Bar that night. In *Commonwealth v. Reel*, 449 Pa. 381, 453 A.2d 923 (1982) the Pennsylvania Supreme Court stated there is probable cause to arrest when an eyewitness gives a detailed physical description of the actor which leads the police to believe that a certain person is the described actor. Appellant insists the description provided by Miss Smith was not precise enough and that many men in that area of Philadelphia fit the given description. This argument overlooks the fact the officers were looking for a man of these characteristics only at the Baby Grand Bar at 11:00 p.m., the appointed rendezvous time. Although we believe the description provided by the victim in this case was sufficient, standing alone, as a basis for probable cause to arrest appellant, the totality of the circumstances which the police are facing must be considered. "Facts insufficient to justify an arrest if considered separately may in combination supply probable cause." *Commonwealth v. Verdekal*, 351 Pa.Super. 412, 420, 506 A.2d 415, 419 (1986). The detailed description given by Miss Smith of her attacker plus the fact this man was to be at the Baby Grand Bar at 11:00 p.m. supplied the police with sufficient information to give them probable cause to arrest appellant.

■ Appellant's second contention is that his trial counsel was ineffective for not entering a motion to exclude appellant's prior criminal record so that he could testify on his own behalf without fear of impeachment. This claim is

without merit, however, since appellant's previous convictions were for crimes involving dishonesty (e.g. theft, attempted theft). Under the standard set forth in *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987) these convictions could be introduced to impeach appellant's credibility and the court could not exclude this as inadmissible. Trial counsel is not ineffective for failing to raise a meritless claim. *Commonwealth v. Cotton*, 338 Pa.Super. 20, 487 A.2d 830 (1984).

Appellant also claims his counsel was ineffective for not raising the unconstitutionality of the sentence appellant received. Two arguments were raised. First, he argues the sentence should be set aside because the trial judge did not make a statement of the reasons and factors considered for the sentence imposed.[1] This is totally without merit; a simple review of the transcript of the sentencing shows the judge based his decision upon the heinousness of the crimes committed against Miss Smith and the incorrigibility of appellant.

Appellant's second argument is that the sentencing guidelines are invalid, therefore his counsel was ineffective for not raising the issue in post-verdict motions. This argument is based upon the recent decision by our Supreme Court in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987). The Court found the sentencing guidelines were not adopted according to the requirements of the Pennsylvania Constitution under article III, § 9. Thus, the guidelines had "no force at all." For a party to successfully argue the *Sessoms* decision applies to their case, however, the issue must have been "properly preserved at all stages of adjudication up to and including any direct appeal." *Sessoms, supra*, 516 Pa. at 380 n. 2, 532 A.2d at 782 n. 2, quoting *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). Since appellant did not properly preserve this issue, *Sessoms* is not applicable to his case.

1. Reasons for the sentence imposed must be placed on the record or the sentence may be set aside. *Commonwealth v. Knepp*, 307 Pa.Super. 535, 453 A.2d 1016 (1982).

We cannot accept appellant's contention that his trial counsel was ineffective for not raising the issue in post-verdict motions. At the time the post-verdict motions were filed by appellant's trial counsel, *Sessoms* was not decided.[2]

■ Finally, appellant's third claim is that the sentence of 7 to 15 years he received for his conviction on involuntary deviate sexual intercourse was excessive, thereby violating the VIIIth and XIVth amendments to the Constitution. Involuntary deviate sexual intercourse has an offense gravity score of 9; appellant has a prior record score of 1. The applicable guideline ranges, therefore, inclusive of the deadly weapon enhancement, are as follows: minimum, 54–90 months; aggravated, 78–106 months; and mitigated, 43–66 months. Appellant's sentence falls within the minimum range of the guidelines and is less than the statutory maximum of twenty years (18 Pa.C.S.A. § 3123; 18 Pa.C.S.A. § 1103(1)). The trial court has discretion in sentencing defendants and there was certainly no abuse of discretion here considering appellant's history of criminal activity and the circumstances of the crimes at issue. Thus appellant's claim is frivolous.

Judgment of sentence affirmed.

CIRILLO, President Judge, filed a concurring and dissenting opinion.

CIRILLO, President Judge, concurring and dissenting:

I join in the majority's disposition of the issue involving probable cause, and concur in the disposition of the narrow issue presented in appellant's ineffectiveness claim, that is

2. We note the apparent dichotomy facing appellant—to argue a *Sessoms* challenge, the issue had to have been preserved in a lower court motion. However, *Sessoms* was not decided when this case was resolved by the trial court and sentence rendered. To hold counsel accountable in such a situation would mean that every issue decided by a court would have to be challenged as unconstitutional "just in case" it is later found to be unconstitutional by a subsequent higher court decision. Such a result is undesirable. Counsel may not be held to be ineffective for failing to anticipate changes in case law or legislation. *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

to say, that finding counsel ineffective for failure to raise a *Sessoms* argument in this case when *Sessoms* had not yet been decided would be inappropriate since we cannot hold attorneys responsible for predicting changes in the law. However, because my analysis of the sentencing issue differs from that of the majority, I write separately to clarify my position on the broader concerns implicated by appellant's ineffectiveness argument. I must also express my dissent from the majority's analysis of appellant's claim that the sentence imposed upon him was excessive.

With respect to appellant's claim that counsel should have questioned the constitutionality of the sentencing guidelines, I must point out that even if the claim of unconstitutionality had been raised by counsel at every point in the appellate process, that mere claim is not a password to appellate review of the merits of the case. I am of the opinion that merely stating that the Sentencing Guidelines are unconstitutional, without more, cannot raise a substantial question under *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). The Sentencing Guidelines were never more than guidelines for the sentencing courts to follow; an abuse of discretion cannot be implied from the fact that a sentence was imposed under the guidelines before their invalidation. For this reason, I would find that failure to preserve the unconstitutionality argument here was not grounds for an ineffectiveness claim. Counsel cannot be found ineffective for failing to raise a meritless claim. *Commonwealth v. Arthur*, 488 Pa. 262, 265, 412 A.2d 498, 500 (1980); *Commonwealth v. Jones*, 365 Pa.Super. 57, 62, 528 A.2d 1360, 1363 (1987).

I dissent from the majority's consideration of Bells' claim that his sentence was excessive. I disagree with the majority decision in *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (en banc), which held that an appellant's failure to comply with Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure and *Tuladziecki*, if not objected to by the appellee, is a waivable procedural violation. In my opinion, the majority in *Krum* has misinterpreted the

supreme court's decision in *Tuladziecki*. *See Krum*, 367 Pa.Super. at 523–524, 533 A.2d at 140 (Brosky, J., dissenting). In Pa.R.A.P. 2119(f), the supreme court has specified the manner in which an appellant seeking review of the discretionary aspects of sentence must petition our court for an allowance of appeal under 42 Pa.C.S. § 9781(b):

An appellant who challenges the discretionary aspects of sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

This was reiterated in *Tuladziecki:* "It is only where a party can articulate reasons why a particular sentence raises doubts that this scheme as a whole has been compromised that the appellate court should review the manner in which the trial court exercised its discretion." *Tuladziecki*, 513 Pa. at 515, 522 A.2d at 20 (emphasis added). If a party does not first articulate those reasons, we cannot, according to the decision in *Tuladziecki*, go rummaging through the record and the merits of the issue raised to discover some substantial question. I therefore take issue with the decision in *Krum*, and would find appellant's claim waived for failure to supply a 2119(f) statement of reasons relied on for appeal.

Further, had I, like the majority, been able to reach the merits of Bells' claim, I would not have analyzed it by resorting to discussions of offense gravity scores. Given *Sessoms*, the only analysis needed to dispose of the abuse of discretion claim was the majority's consideration of the appellant's history of criminal activity and the circumstances of the crimes for which he was sentenced, and its statement that the sentence was less than the statutory maximum. Discussion of the offense gravity scores was unnecessary, although not necessarily incorrect. Even though the sentencing guidelines were declared to be void ab initio, they were never more than recommendations to

the sentencing court to aid in its determination of the appropriate sentence. The mention of them in connection with the analysis of a possible abuse of discretion on the part of the sentencing court is not fatal. I would only caution that whether or not a sentencing court has abused its discretion cannot be decided solely from an examination of the now-defunct guidelines.