555 A.2d 199

**COMMONWEALTH of Pennsylvania**

v.

**Joseph TAVARES, Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1988.

Filed March 7, 1989.

318

Robert N. Dellavella, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before ROWLEY, DEL SOLE and BECK, JJ.

BECK, Judge:

Joseph Tavares appeals the judgment of sentence of three to ten years imprisonment following a bench trial in which he was convicted of attempted involuntary deviate sexual intercourse (IDSI), indecent assault, and unlawful restraint.

Tavares, an attendant at Inglis House, a home for handicapped persons, entered the room of David Savage, a nineteen year old resident with cerebral palsy. David was talking with another resident, Michael Panunto, who also has cerebral palsy and who was sitting in his wheelchair next to David's bed. Tavares asked the two if they wanted to have sex. Thinking he meant "with a girl, not with a man" David said yes. Michael, who communicates through the use of a speak and spell word board, indicated, "No." Tavares pushed David's wheelchair against the door to hold it closed. He pulled down David's bedsheet, removed his bed bag, and placed Michael's hand on David's penis. David said "knock it the fuck off, Joe" and Michael removed his hand. Tavares then placed Michael's hand back on David's penis, and pushed Michael's head down to within an inch or two of David's penis. Michael tried to pull his head back up, but could not overcome Tavares' hold. The episode ended when David's father knocked on the door and an attendant brought in lunch trays. Shortly thereafter, Michael telephoned his mother and, with the aid of the speak and spell, communicated what had happened. Mrs. Panunto went to Inglis house where both Michael and David repeated to her the story of what had occurred. Mrs. Panunto reported the incident to the head of nursing, and after a week with no result, she reported the incident to police.

Tavares was convicted in a non-jury trial of attempted IDSI, indecent assault, and unlawful restraint. It appears that post-verdict motions were never formally made. However, the judge ruled upon them. Although failure to file post-verdict motions usually results in waiver of the issues raised, Tavares' issues raised in the context of ineffectiveness of counsel are properly before us on direct appeal. *See Commonwealth v. Johnson,* 347 Pa.Super. 93, 500 A.2d 173 (1985) (issues of ineffectiveness of trial counsel must be raised by new counsel at earliest possible stage of proceedings.)

 Tavares contends that trial counsel was ineffective for failing to file post-trial motions and for failing to include all assignments of error therein. In examining a claim of ineffective assistance of counsel, the reviewing court must first determine whether the issue underlying the ineffectiveness claim is of arguable merit. Second, it must be determined whether the course chosen by counsel had some reasonable basis aimed at protecting the defendant's interests. Finally, the court must find that counsel's action or inaction resulted in prejudice to the defendant. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Throughout this process the law presumes effectiveness of counsel and the defendant has the burden of proving ineffectiveness. *Commonwealth v. Tyson*, 363 Pa.Super. 380, 526 A.2d 395 (1987). As appellant in the instant case contends that trial counsel was ineffective for failing to file post-trial motions, we now consider each of the issues under the three-pronged test for ineffectiveness set forth in *Pierce.*

 We initially test whether Tavares' first claim has arguable merit. Tavares contends that the trial court erred in convicting him of attempted IDSI and indecent assault as he did not engage in the proscribed conduct with either of the complainants. The IDSI statute provides in pertinent part:

3123. Involuntary deviate sexual intercourse

A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

18 Pa.C.S.A. section 3123 (Purdon 1983). The indecent assault statute provides:

3126. Indecent Assault

A person who has indecent contact with another not his spouse, or causes such other to have indecent contact

with him is guilty of indecent assault, a misdemeanor of the second degree, if:

(1) he does so without consent of the other person; 18 Pa.C.S.A. section 3126 (Purdon 1983).

Although Tavares did not himself have indecent contact with the complainants, criminal liability was extended to him under the statute relating to liability for the conduct of another, 18 Pa.C.S.A. section 306 (Purdon 1983). Section 306 provides, in pertinent part:

306. Liability for conduct of another; complicity

(a) *General rule.*—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) *Conduct of another.*—A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct.

█ The issue of whether one may be held criminally responsible for causing an indecent contact between two unconsenting individuals is one of first impression in this jurisdiction.[1] We hold that section 306 imputes criminal liability to the individual who forces unlawful contact between two innocent victims.

Section 306 was derived verbatim from the Model Penal Code. The Official Comment to the Model Penal Code explains that this particular provision restates the "universally acknowledged principle that one is no less guilty of the commission of a crime because he uses the overt conduct of an innocent or irresponsible agent." Model Penal Code Section 2.06(2)(a), Comment at 300 (Official Draft, 1985). Furthermore, the Official Comment points out that this

---

1. Both the IDSI and indecent assault statutes contain provisions to penalize those individuals who *themselves* engage in illicit conduct with those who are mentally deranged or deficient (section 3123(4)), or under supervision in a hospital or institution (section 3126(5)). These sections are not applicable in the instant case.

provision "determine[s] liability by the culpability and state of mind of the defendant, coupled with his own overt conduct and the conduct in which he caused another to engage." *Id.* Comment at 303.

We note in passing that other states have acknowledged criminal liability of a third party who has caused two innocent victims to engage in proscribed conduct. For example, the California Court of Appeals, in *Commonwealth v. Hernandez*, 18 Cal.App.3d 651, 96 Cal Rptr. 71 (1971), sustained the conviction of a woman who compelled her husband, at gunpoint, to have sex with another, nonconsenting woman. Applying what it termed the "innocent conduit theory" the court noted that without this theory "the laws ... would create a crime without a punishable perpetrator." *See also State v. Thomas*, 619 S.W.2d 513 (Tenn.1981) (defendant criminally liable for forcing wife to perform fellatio on her husband.); *People v. Roberts*, 26 Cal.App.3d 385, 103 Cal.Rptr. 25 (1972) (upholding conviction of defendant for instructing children to engage in sexual activities with one another.); *State v. Brown*, 147 Vt. 324, 515 A.2d 1059 (1986) (defendant criminally liable for forcing victims to have intercourse).

■ Appellant in the instant case asserts that his conviction under section 306 cannot stand because this statute is unconstitutionally vague and is therefore void on its face. We disagree. In *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976), the Supreme Court of Pennsylvania considered a facial attack on a statute prohibiting public lewdness. In explaining the concept of facial voidness, the court noted:

Appellant urges that we measure the challenged statutory proscription, not against the specific conduct involved in this case, but against the hypothetical conduct that the statutory language could arguably embrace. To do so, however, would require us to adjudicate the rights of parties not presently before the court, at the insistence of a party who does not have standing to assert such rights. *It is for this reason that facial attacks on the*

*validity of statutes are not generally permitted.* [citations omitted] *Absent the assertion of an infringement of the First Amendment freedoms, the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged.*

354 A.2d at 245 (emphasis supplied).

■ The rationale behind permitting facial attacks of a statute only where the First Amendment is implicated was explained by the United States Supreme Court in *Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982):

Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. [citations omitted] One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. [citations omitted] The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague "not in the sense that it requires a peson to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all." [citations omitted]

*Id.* at 495 n. 7, 102 S.Ct. at 1191 n. 7. In considering an attack upon a statute for vagueness where the First Amendment is not implicated, therefore, we must examine the vagueness challenge in light of the specific facts of the case at hand. *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *Commonwealth v. Dodge*, 287 Pa.Super. 148, 429 A.2d 1143, 1146 (1981) (where a vagueness challenge does not implicate First Amendment freedoms of speech, association, or assembly, the definiteness of a statute will be decided in light of the conduct in which the party challenging the statute has engaged.)

In order to pass constitutional muster "a criminal statute must give reasonable notice of the conduct which it proscribes to a perśon charged with violating its interdiction." *Commonwealth v. Wescott*, 362 Pa.Super. 176, 195, 523 A.2d 1140, 1149 (1987). In addition, the statute must pro-

vide a standard for law enforcement officials so as to prevent arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). However, the constitutional requirement of notice does not serve to "invalidate every statute which could have been drafted with greater precision," *Wescott*, 362 Pa.Super. at 195, 523 A.2d at 1149, and statutes under attack are not "to be tested against paradigms of legislative draftsmanship." *Heinbaugh*, 467 Pa. at 6, 354 A.2d at 246.

Tavares asserts that section 306 fails to give notice of the proscribed conduct because one is left to guess as to who may be considered "innocent" or "irresponsible" for purposes of the statute. Tavares further claims that the statute fails in not defining the necessary causal connection between the action of the accused and the proscribed conduct, so as to render the accused culpable for the behavior of another.

As section 306 provides no definitions for the terms at issue, we look to the Statutory Construction Act, 1 Pa.C. S.A. section 1903 (Purdon Supp.1988), which serves as a guide to the interpretation of our Pennsylvania statutes. The Statutory Construction Act provides that "words and phrases shall be construed according to rules of grammar and according to their common and approved usage ..." *See also Commonwealth v. Hill*, 481 Pa. 37, 391 A.2d 1303 (1978).

Following the direction of the Statutory Construction Act, we look first to the common and approved usage of the terms in question. Webster's New Collegiate Dictionary (1981 ed.) defines "innocent" as "free from guilt" or "blameless," and "irresponsible" as "not responsible, said or done with no sense of responsibility." Both Webster's Dictionary and Black's Law Dictionary define cause as "something that brings about an effect or result." We find no ambiguity in these terms themselves.

As the instant case does not involve a facial attack of a statute based upon its implication of first amendment

rights, we are required to apply the terms of the statute to the conduct of the appellant. *United States v. Mazurie, supra.* Tavares' conduct consisted of attempting to bring to fruition an indecent contact, namely oral intercourse, between two individuals who, due to cerebral palsy, are confined to wheelchairs and need assistance in the performance of tasks requiring physical movement. It seems clear that the person of average intelligence would understand that the terms "innocent or irresponsible," as appear in the statute, would apply to individuals who, because they have little or no control over their movement, would be "blameless" or "without responsibility" when a third person of average strenth and dexterity attempts to direct such movement. As to the question of causation, it was for the finder of fact to determine whether or not Tavares' actions "brought about the effect" of the victims in this case engaging in the proscribed conduct. We therefore conclude that section 306 provided appellant, as well as law enforcement officials, with fair notice that appellant's actions would render him legally accountable for the conduct of the victims.

As Tavares' first issue is without arguable merit, it fails to satisfy the first prong of the *Pierce* test of ineffective assistance of counsel.

■ Tavares presents several other issues for our review, each of which lacks arguable merit. First, he claims that the trial judge, in imposing sentence, improperly considered the 1982 sentencing guidelines which were held invalid in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987). As was noted in *Sessoms*, individuals sentenced under the guidelines are not entitled to a new hearing unless they specifically challenged the validity of the guidelines at all stages of appeal. *Id.*, 516 Pa. at 380, n. 2, 532 A.2d at 782 n. 2. No such challenge was preserved by Tavares. Even if Tavares were to claim that counsel was ineffective for failing to preserve his *Sessoms* claim, such an argument would be without merit. *Commonwealth v. Bells*, 373 Pa.Super. 57, 540 A.2d 297, 300 (1988) (counsel

may not be held ineffective for failure to preserve *Sessoms* claim, as counsel has no duty to predict future developments in the law).

■ Tavares next contends that the testimony of the victims in this case was so inconsistent and contradictory that it was insufficient to support the verdict of guilt. It is recognized that the credibility of witnesses is for the finder of fact to determine unless the testimony is so unreliable that a verdict based upon it could be no more than surmise or conjecture. *Commonwealth v. Smith,* 502 Pa. 600, 467 A.2d 1120 (1983). However, "the mere existence of conflict in the prosecution's evidence is not fatal" and the resolution of such conflict is left to the finder of fact. *Id.,* 502 Pa. at 607, 467 A.2d at 1123. Tavares' argument is therefore without merit.

■ Appellant next asserts that victim Michael Panunto, who communicates using a speak and spell, was incompetent to testify at trial. Under *Commonwealth v. Bristow,* 372 Pa.Super. 48, 538 A.2d 1343, 1346 (1988), a court must look to three factors to determine the competency of a witness: 1) capacity to communicate, including an ability to understand questions and to frame and express intelligent answers; 2) mental capacity to observe and remember the occurrence; and 3) a consciousness of the duty to speak the truth. Although Michael must communicate by spelling out words letter by letter, he is physically, not mentally, incapacitated. His ability to communicate may be slower than that of the average person, but this is merely a result of the apparatus he uses to communicate, not of his inability to understand questions and to frame answers. In addition, as the reason for disqualifying an incompetent witness "derives from the judges' distrust of the jury's ability to assay the credibility of such witnesses, the applicability of the rule has little place in non-jury trials." *Commonwealth v. Speicher,* 259 Pa.Super. 433, 439, 393 A.2d 904, 907 (1978). We therefore find no merit to appellant's argument.

Tavares next asserts that the evidence was insufficient to establish that the complainants did not voluntarily engage

in the acts. Viewing the evidence as we must, in favor of the Commonwealth as verdict-winner, *Commonwealth v. Taylor,* 324 Pa.Super. 420, 471 A.2d 1228 (1984), we conclude that the testimony in this case was more than sufficient to establish that the victims did not wish to participate in the acts forced upon them.

 Tavares' final contention is that the trial court abused its discretion in permitting the Commonwealth to use leading questions in its direct examination of Michael Panunto. It has been recognized that where a witness is experiencing difficulty in answering questions, it is not an abuse of discretion for the court to permit leading questions. *Commonwealth v. Keaton,* 276 Pa.Super. 518, 419 A.2d 578 (1980) *aff'd.,* 494 Pa. 566, 431 A.2d 999 (1981). Michael types out words letter by letter on the speak and spell. As a result, it is a difficult and time-consuming proposition for him to communicate a long sentence. It was therefore within the court's discretion to permit counsel to use leading questions requiring only short answers in the interest of time, and to avoid confusion.

As none of appellant's contentions have arguable merit as required under the first prong of the test enunciated in *Pierce, supra,* his claim of ineffective assistance of counsel must fail.

Judgment of sentence is affirmed.

DEL SOLE, J. files a dissenting statement.

DEL SOLE, Judge, dissenting statement:

I dissent from the disposition of the Majority in this case and would remand the matter to the trial court for the purposes of filing an opinion relative to the issues raised on appeal.

Unfortunately, the trial judge in this case saw fit not to file an opinion but to send to this court, in compliance with Pa.R.A.P. 1925 a letter dated January 25, 1988 directed to the Prothonotary referring to a case of *Commonwealth v.*

*Commenger* wherein the trial judge pointed out that in that case, since the defendant's post-verdict motions were not part of the record that she was not required to write an opinion. There is a post script to that letter which states "In the case of Joseph Tavares, Docket No. 01312 Phil. 87, Defendant also failed to file post-verdict motions." The record does not contain post-verdict motions, and the trial court has said that none were filed. However, the trial judge appears to be inconsistent in her statements on this matter. While the post script indicates no post-verdict motions, the transcript of the proceedings held before the court on April 10, 1987 indicate otherwise. Specifically, defense counsel set forth that while the primary argument on the legal issues had occurred prior to the entering of the verdict, that in order to preserve the record, post-verdict motions were filed. (N.T. April 10, 1987, pg. 4)

The court on the same page stated as follows:

The Court: Having had the opportunity to read both briefs or memoranda, the issue is a fascinating one, but I think my decision originally made was correct when I entered the verdict and I am going to stay with it. ... I am going to formally deny the post-verdict motions and move on to sentencing.

Also, the record reveals that an order was entered on April 10, 1987 by the trial judge wherein she denied post-verdict motions.

Therefore, I would remand this matter to the trial court for the purposes of determining whether or not post-verdict motions were in fact filed, since the trial judge in two places has indicated that they were, and, if they had been properly filed for the purposes of obtaining a trial court opinion on the issues raised by post-verdict motions. I am not in agreement with the Majority's decision to assume that such motions were never formally made. It may be that they had not been correctly included in the record and the record should be corrected.