666 A.2d 672

**COMMONWEALTH of Pennsylvania,**

v.

**Kenneth S. SMOLKO, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1995.

Filed Oct. 10, 1995.

158

Laura Dunhoff, Pittsburgh, for appellant.

Christian A. Fisanick, Assistant District Attorney, Barnsboro, for Commonwealth, appellee.

Before POPOVICH, FORD ELLIOTT, and BROSKY, JJ.

FORD ELLIOTT, Judge:

In this appeal from the judgment of sentence entered in the Court of Common Pleas of Cambria County on August 16, 1994, we are asked to decide, *inter alia*, whether a physical deficiency that prevents a person from defending himself against unwanted sexual encounters can be the basis for a finding of forcible compulsion beyond a reasonable doubt. We hold that it can.

The facts giving rise to this appeal in general, and the aforementioned issue in particular, have been aptly summarized by the trial court, which was also the finder of fact:

> The victim ... suffers from an affliction known as Pelizaeus–Merzbacher Syndrome. This disease, which effects [sic] the central nervous system, causes [the victim] to have the inability to speak, control his motor movements, restricts him to a wheel chair, and has left him with very little strength. [The trial court's] first-hand observation of the victim supported the fact that the victim suffers from these symptoms. On April 1, 1993, [appellant] was employed by the victim's parents as a home health aide to care for the victim and his two uncles, who also suffer from Pelizaeus–Merzbacher Syndrome. While performing this job, [appellant] was alone with the victim and his uncles. Moreover, these men relied on the [appellant] to assist or perform all of the duties which were necessary for them to survive. Based on this, the court found that the victim was in a vulnerable position and [appellant] acted from a position of authority....
>
> The victim testified that [appellant] performed oral sex on him four times during a period when the victim's father was away. The victim further testified that he did not want [appellant] to do this to him, but was unable to stop him....

Trial court opinion, 1/9/95 at 3 (citations to notes of testimony omitted). The testimony of victim, who could only indicate "yes" by raising his arm or "no" by crossing his arms, was as follows:

Commonwealth [Q]: When Dom [appellant's nickname] was working there, did something bad happen?

Victim [A]: Raises arm.

Q: Did something bad happen to you?

A: Raises arm.

Q: Did Dom do something bad to you?

A: Raises arm.

Q: Did Dom touch a part of your body?

A: Raises arm.

Q: Did you want Dom to touch that part of your body?

A: Crosses arms.

Q: Could you stop Dom from touching that part of your body?

A: Crosses arms.

Notes of testimony, 6/28/94 at 51–52.[1]

Based upon the foregoing testimony, appellant was convicted of one count of involuntary deviate sexual intercourse [IDSI] and two counts of indecent assault.[2] He was sentenced to serve three (3) to six (6) years for IDSI, with concurrent sentences of six (6) to twenty-three (23) months for each of the indecent assault convictions.

■■■■ Appellant challenges his IDSI conviction based upon his claim that, even if the victim's testimony were believed by the trial court, there was insufficient evidence to prove that appellant engaged in deviate sexual activity with the victim by forcible compulsion.[3] Our standard of review of sufficiency of the evidence claims is well-settled:

1. We pause to note how helpful it would have been if the Commonwealth, which was permitted to ask leading questions to elicit testimony from the victim, had developed the record more fully by asking the victim questions that more specifically addressed the element of forcible compulsion. Because the Commonwealth missed this opportunity, we are left with a very lean record from which we may draw only such reasonable inferences as the limited testimony allows.

2. 18 Pa.C.S.A. §§ 3123 and 3126, respectively.

3. 18 Pa.C.S.A. § 3123 provides:

In reviewing a sufficiency of the evidence claim this Court must determine whether the evidence, and all reasonable inferences deducible therefrom, when viewed in a light most favorable to the Commonwealth, are sufficient to establish all the elements of the crime beyond a reasonable doubt. *Commonwealth v. Riley,* 434 Pa.Super. 414, 643 A.2d 1090, 1091 (1994) (citation omitted). The test for forcible compulsion under the IDSI section of the Crimes Code is identical with the test for forcible compulsion under § 3121, the rape statute. *Commonwealth v. Williams,* 294 Pa.Super. 93, 439 A.2d 765 (1982). As a result, we may look to those cases addressing the issue of forcible compulsion under § 3121 for guidance.

Our supreme court dealt with the issue of the quantum of evidence necessary to support a finding of forcible compulsion beyond a reasonable doubt in *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986). In *Rhodes,* the attacker, a twenty-year-old man who had lived across the street from the eight-year-old victim for three years, led the young girl to an abandoned building where he ordered her to lie down. When she complied, he penetrated her vagina and rectum with his penis, despite the victim's asking him to stop. *Id.* at 539–542, 510 A.2d at 1218–19. Rhodes was convicted of rape, statutory rape, IDSI, indecent assault, indecent exposure, and corruption of minors. On appeal, the superior court set aside the rape conviction and remanded for resentencing. The Commonwealth appealed. In reversing the superior court, the supreme court in *Rhodes* stated:

'[F]orcible compulsion' ... includes not only physical force or violence but also moral, psychological or intellectual force

A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:
(1) by forcible compulsion;
(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
(3) who is unconscious;
(4) who is so mentally deranged or deficient that such person is incapable of consent; or
(5) who is less than 16 years of age.
Appellant was only charged under (1), forcible compulsion.

used to compel a person to engage in sexual intercourse against that person's will.

*Id.* at 555, 510 A.2d at 1226. The *Rhodes* court continued:

> The determination of whether there is sufficient evidence to demonstrate beyond a reasonable doubt that an accused engaged in sexual intercourse by forcible compulsion ... is, of course, a determination that will be made in each case based upon the totality of the circumstances that have been presented to the fact finder. Significant factors to be weighed in that determination would include the respective ages of the victim and the accused, *the respective mental and physical conditions* of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, *the extent to which the accused may have been in a position of authority, domination or custodial control* over the victim, and whether the victim was under duress. This list of possible factors is by no means exclusive.
>
> It is neither desirable nor appropriate to attempt to delineate all of the possible circumstances that might tend to demonstrate that sexual intercourse was engaged in by forcible compulsion ... That delineation will evolve in the best tradition of the common law—by development of a body of case law applying section 3121 (as it has been here construed) and the principles of construction set forth in the Crimes Code.... When forcible compulsion ... consists of 'moral, phychological [sic] or intellectual force,' the force may be less tangible but is not less susceptible of proof, and the critical circumstances and evidence here will be those which tend to prove or disprove compulsion or lack of consent, *i.e.* that such force was 'used to compel a person to engage in sexual intercourse *against that person's will.*'

*Id.* at 555–558, 510 A.2d at 1226–27 (emphasis added) (citations omitted). The *Rhodes* court found forcible compulsion based upon the child's physical and emotional helplessness in the face of her neighbor's commands, especially where the child knew and trusted the adult. *Id.* at 558, 510 A.2d at 1227.

As the *Rhodes* court predicted, the meaning of forcible compulsion has evolved over the years in the best tradition of the common law. Recently, courts addressing the issue have found forcible compulsion where the victim was asleep when attacked, but woke up and struggled with her attacker. *Commonwealth v. Price*, 420 Pa.Super. 256, 616 A.2d 681 (1992). Courts have also found forcible compulsion where an adolescent victim, undergoing therapy, submitted to sexual intercourse with the therapist out of fear that the therapist would ruin his chances for adoption or would hurt someone the victim cared about. *Commonwealth v. Frank*, 395 Pa.Super. 412, 577 A.2d 609 (1990), *allocatur denied*, 526 Pa. 629, 584 A.2d 312 (1990), *denial of post conviction relief affirmed*, 433 Pa.Super. 246, 640 A.2d 904 (1994), *allocatur denied*, 538 Pa. 665, 649 A.2d 668 (1994). Courts have also found forcible compulsion where a deaf adolescent minor who had a crush on her assailant and thought of him as her boyfriend went to an isolated location with him and lay down on the ground voluntarily, but said "no" and "off" when her assailant pulled down the zipper on her pants. *Commonwealth v. Meadows*, 381 Pa.Super. 354, 357, 553 A.2d 1006, 1008 (1989), *allocatur denied*, 524 Pa. 618, 571 A.2d 381 (1989).

In contrast, courts have found the evidence insufficient to support a finding of forcible compulsion where the victim and the accused were both college students of approximately the same age, the victim went voluntarily to the accused's dorm room, and the victim made no attempt to leave the room or call for help, even though the victim repeated "no" throughout the encounter. *Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161 (1994). As the *Berkowitz* court opined, "where there is a lack of consent, but no showing of either physical force, a threat of physical force, or psychological coercion, the 'forcible compulsion' requirement ... is not met." *Id.* at 149, 641 A.2d at 1164. Support for this position was found in *Commonwealth v. Mlinarich*, 518 Pa. 247, 542 A.2d 1335 (1988), *reargument denied*, 522 Pa. 1, 559 A.2d 504 (1989), in which a divided supreme court affirmed the superior court's finding that the fourteen-year old victim was not forcibly

compelled to submit to her attacker, who threatened to return her to a detention home if she did not acquiesce in his demands. The *Mlinarich* plurality attempted to carve out a distinction between psychological compulsion and intellectual or moral compulsion in arriving at its holding. *Id.* at 260, 542 A.2d at 1342.

With the relevant case law before us for guidance, we must decide whether sufficient evidence of forcible compulsion exists to sustain a conviction for IDSI where a paid caretaker, upon whom the victim relies for his most basic needs six hours out of the day, engages in oral sex with a young man who is confined to a wheelchair by a totally and permanently debilitating disease of the central nervous system, and whose only method of communication is by gesturing with his arms. In order to make this determination, we shall undertake a careful reading of *Rhodes,* as well as a careful analysis of the distinction between those cases cited supra finding forcible compulsion and those cases in which forcible compulsion was found not to exist.

 Returning first to *Rhodes,* the polestar of our forcible compulsion analysis, we reiterate that court's statement that, when determining whether evidence is sufficient to demonstrate forcible compulsion beyond a reasonable doubt, factors to be considered include the respective physical conditions of the victim and the accused, as well as the relative position of authority, domination, or custodial control the accused may exercise over the victim. *Rhodes, supra* at 554, 510 A.2d at 1226. When we consider those factors vis-a-vis the instant case, we note that appellant was placed in a position of trust by the victim's parents, that appellant exercised complete control over the victim from 8:30 a.m. until 1:30 p.m. five days a week, that the victim was dependent upon appellant for food, cleanliness, and mental stimulation for that period, and that the victim was physically unable to tend to his most basic needs or to defend himself. (Notes of testimony, 6/28/94 at 10–16.) As a result, we conclude that two of the factors enumerated by the *Rhodes* court are present in the instant case.

Comparing the facts of the instant case with the facts of those cases finding a lack of forcible compulsion, we find those cases distinguishable. In *Berkowitz, supra,* for instance, the victim, a college student, was physically able to resist, to call out for help, or to attempt to flee; however, the Commonwealth presented no evidence that she made any effort to resist beyond saying "no." *Id.* at 148–49, 641 A.2d at 1164.

In *Mlinarich,* on the other hand, the supreme court and the superior court faced a much more difficult factual scenario. The victim, a fourteen-year-old girl, was systematically sexually abused by her sixty-three-year-old caretaker while his wife was at work, under threat of being returned to a juvenile detention center. Based upon their distinction between a situation in which "the compulsion overwhelms the will of the victim" and one "where the victim can make a deliberate choice to avoid the encounter even though the alternative may be an undesirable one," *Id.* at 259, 542 A.2d at 1341, three members of the evenly divided supreme court found insufficient evidence of forcible compulsion.[4]

We find the instant case factually distinguishable from *Berkowitz,* and analytically distinguishable from *Mlinarich.* Clearly, here we do not have the parity that existed between the victim and the accused in *Berkowitz.* And just as clearly, the victim instantly was unable to "make a deliberate choice to avoid the encounter." *Mlinarich, supra* at 259, 542 A.2d at 1341. Lacking the physical strength to resist, or the ability effectively to communicate his will, the victim in the case before us was at the mercy of his caretaker for six hours at a time.

As noted supra, § 3123 provides that a person can be found guilty of IDSI if, *inter alia,* he engages in deviate sexual intercourse with a person who is unconscious, or a person who is so mentally deranged or deficient that the person is incapable of consent. 18 Pa.C.S.A. § 3123(3), (4). The rape statute,

4. This court, in *Commonwealth v. Titus,* 383 Pa.Super. 54, 60 n. 2, 556 A.2d 425, 428 n. 2 (1989), reviewed the state of the law of forcible compulsion after *Mlinarich* and *Rhodes,* and concluded that *Rhodes* was still the law of this Commonwealth.

§ 3121, contains identical language. As noted supra, the *Rhodes* court found Rhodes guilty under the forcible compulsion subsection of the rape statute. In addition, however, the court found him guilty under the "mentally deficient" subsection, finding that an eight-year-old is mentally deficient as a matter of law to consent "to an act whose nature she could not appreciate or comprehend." *Rhodes, supra* at 558, 510 A.2d at 1228.

Unfortunately, §§ 3121 and 3123 do not address the situation, such as the one before us now, in which the victim is conscious, and mentally competent,[5] but so *physically* deficient as to be unable to exert his will to resist the sexual demands of another. We are confident, however, that a fair reading of *Rhodes, supra*, fills the gap left in the statute by the legislature. Accordingly, we find sufficient evidence of forcible compulsion beyond a reasonable doubt to sustain a conviction for IDSI.

■ For the foregoing reasons, we also find no merit to appellant's second issue; namely, that there was insufficient evidence to convict appellant of indecent assault. The crime of indecent assault is codified at 18 Pa.C.S.A. § 3126. Appellant was charged under subsection (1). Section 3126 provides in pertinent part:

(a) **Offense defined.**—A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him, is guilty of indecent assault if:

(1) he does so without the consent of the other person[.]

18 Pa.C.S.A. § 3126(a)(1). It is readily apparent from that portion of the notes of testimony included supra that appellant's indecent contacts with the victim were done without the victim's consent. The record also supports the trial court's finding that the contacts were indecent:

5. Testimony at trial indicated that the victim was of average verbal intelligence and could understand the English language at least at the level of a high school graduate. (Notes of testimony, 6/28/94 at 36.)

Commonwealth attorney [Q]: Now, when you go to make number one when you go to the bathroom, do you call that a peterdink:

Victim [A]: Raises arm.

Q: Now, did Dom touch your peterdink?

A: Raises arm.

Q: Did he touch it with his hands?

A: Crosses arms.

Q: Did he touch it with his foot?

A: Crosses arms.

Q: Did he touch it with his mouth?

A: Raises arm.

Q: [Victim], can you show us with your fingers how many times he touched it with his mouth?

A: Displays four fingers.

Q: Is it four times, [victim]?

A: Raises arm.

Q: Did it make you feel bad when he did that?

A: Raises arm.

Notes of testimony, 6/28/94 at 52–53. As a result, we find no merit to appellant's second issue.

■ Because appellant's issues three through six raise ineffectiveness of counsel claims, we shall address these together after first addressing appellant's seventh and final issue; namely, whether the trial court erred by permitting the Commonwealth to ask leading questions of the victim. The record indicates that defense counsel objected in chambers to the Commonwealth's request that it be allowed to ask leading questions.[6] (*Id.* at 46–47.) The trial court ruled on the motion before allowing the victim to testify. In denying appellant's objection, the trial court cited *Commonwealth v. Upchurch*, 355 Pa.Super. 425, 513 A.2d 995 (1986), *allocatur denied*, 514 Pa. 630, 522 A.2d 558 (1987), for the proposition

6. The record does not indicate that a motion *in limine* was filed; however, the trial court states on the record that the issue was raised in chambers. (Notes of testimony, 6/28/94 at 47.)

that the use of leading questions is within the sound discretion of the trial court, and will not be disturbed absent an abuse of that discretion. (Notes of testimony, 6/28/94 at 47.) In addition, the trial court cited *Commonwealth v. Tavares,* 382 Pa.Super. 317, 555 A.2d 199 (1989), *allocatur denied,* 524 Pa. 619, 571 A.2d 382 (1989), a case we find directly on point. (Notes of testimony, 6/28/94 at 47–48.) In *Tavares,* two victims of cerebral palsy were further victimized by their caretaker, Tavares, who attempted to force the two to engage in oral sex. Tavares was convicted of attempted IDSI and indecent assault and appealed. On appeal, he challenged the trial court's decision to allow the Commonwealth to ask leading questions of one of the victims, who was able to communicate by using a "speak and spell." This court, in upholding the trial court's decision, noted that the victim had to type out full words on the speak and spell, making it difficult and time-consuming for him to communicate a long sentence. *Id.* at 327, 555 A.2d at 204. We find the facts of the instant case even more compelling, since the victim here has such a limited ability to communicate verbally that only his mother can understand him. (Notes of testimony, 6/28/94 at 13.) In addition, even his mother acknowledged that she normally communicates with him by trial and error, asking questions that elicit a "yes" or "no" response until she ascertains what the victim is trying to communicate. (*Id.*) As a result, we find no merit to appellant's seventh issue.

██ We next address appellant's issues three through six, all of which raise ineffective assistance of counsel claims. Our standard of review when evaluating ineffective assistance of counsel claims is well settled. We presume that counsel was effective and place upon appellant the burden of proving otherwise. *Commonwealth v. Williams,* 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). In order to do so, appellant must prove that: 1) the underlying claim has arguable merit; 2) counsel's course of action had no reasonable basis designed to effectuate appellant's interests, and 3) counsel's action or inaction prejudiced appellant's right to a fair trial. *Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991), *citing*

*Commonwealth v. Pierce,* 515 Pa. 153, 157–159, 527 A.2d 973, 975–76 (1987). With our standard of review before us, we shall address appellant's ineffectiveness claims in order.

 Appellant alleges in his issue number three that counsel was ineffective for failing to call character witnesses. We find that this claim does have arguable merit. Evidence of good character is substantive, and may, despite evidence to the contrary, raise a reasonable doubt in the mind of the finder of fact. *Commonwealth v. Carter,* 409 Pa.Super. 184, 194–198, 597 A.2d 1156, 1161–62 (1991), *allocatur denied,* 530 Pa. 664, 610 A.2d 44 (1992). The use of character witnesses is especially important in a case such as the one before us in which only the victim and appellant know what actually happened, and where a determination of guilt is based almost entirely on issues of credibility. *Commonwealth v. Luther,* 317 Pa.Super. 41, 51, 463 A.2d 1073, 1078 (1983). We must, therefore, next determine whether we can address the ineffectiveness claim based upon the record before us.

In *Commonwealth v. Petras,* 368 Pa.Super. 372, 534 A.2d 483 (1987), this court stated:

When an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the court below to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing. *See Commonwealth v. Spotts,* 341 Pa.Super. 31, 33, 491 A.2d 132, 134 (1985). However, remand for an evidentiary hearing is not a discovery tool wherein counsel may conduct investigation and interrogation to search for support for vague or boilerplate allegations of ineffectiveness. Rather, appellant 'must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective,' before remand for an evidentiary hearing will be

granted. *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981).

*Petras, supra* at 376, 534 A.2d at 485. *Accord Commonwealth v. Trimble,* 419 Pa.Super. 108, 114–120, 615 A.2d 48, 51–53 (1992).

In the instant case, appellant alleges that, if called to testify at a hearing, he would testify that "he questioned his attorney . . . on several occasions on whether character witnesses would be useful to his case and whether his attorney needed any names of people." (Appellant's brief at 21.) He would further testify that "[e]ach time the subject was brought up, [his attorney] either brushed the issue aside or told Appellant that character witnesses would not be useful." (*Id.*) Appellant alleges that these conversations with trial counsel can be substantiated by his mother, who was present at all of the meetings. (*Id.*) Finally, appellant alleges that he would testify that "there were at least two individuals who had known him all of his life who were willing to testify that they knew him and knew of his community reputation." (*Id.*)

As the Commonwealth points out, however, nowhere in the brief does appellant allege that his trial counsel knew of these individuals, or knew they would be willing to testify. (Commonwealth brief at 9.) Even on appeal, these witnesses remain nameless, and the content of their testimony and availability at the time of trial remain unsupported by affidavit testimony appended to the brief. It has long been the rule in this Commonwealth that in order to obtain relief on the basis of an ineffectiveness claim premised upon counsel's failure to call witnesses, appellant must establish that: 1) the witness existed; 2) the witness was available; 3) counsel knew or should have known about the witness; 4) the witness was prepared to cooperate and testify at trial; and 5) absence of the testimony prejudiced appellant. *Commonwealth v. Petras, supra* at 376, 534 A.2d at 485, *citing Commonwealth v. Griffin,* 357 Pa.Super. 308, 319, 515 A.2d 1382, 1387–88 (1986); *Commonwealth v. Ross,* 273 Pa.Super. 67, 71, 416 A.2d 1092,

1094 (1979). *Accord Commonwealth v. Poindexter,* 435 Pa.Super. 509, 520, 646 A.2d 1211, 1216 (1994), *allocatur denied,* 540 Pa. 580, 655 A.2d 512 (1995) (appellant must, *inter alia,* identify the witness). Appellant has not met this burden.

We agree with the Commonwealth that we must scrutinize post-conviction requests for relief, such as the one before us, carefully, lest remand for an evidentiary hearing become a matter of right every time an appellant raises an ineffectiveness claim on the basis of failure to call character witnesses. (Commonwealth brief at 10 n. 5.) Finding that appellant in the instant case has failed adequately to set forth an offer of proof that would entitle him to an evidentiary hearing, we find no merit to appellant's issue three.

Appellant next asserts that trial counsel was ineffective for failing to obtain an independent psychological examination of the victim to assess the victim's ability to communicate. The basis for this argument is that, if the victim had been able to verbalize what happened, the "full story" would have been elicited and could have been challenged. (Appellant's brief at 22.) Because the victim's mother testified that appellant could verbalize, but that other people had difficulty understanding him, appellant alleges that counsel was ineffective for not pursuing this issue. (*Id.*)

We find no merit to this argument, and hence no reason to reach the next prong of our ineffectiveness analysis. As noted *supra,* the victim's mother testified that even she resorted to "leading" questions to elicit information from her son, and that other people have "a lot of problems" and "don't understand nothing [sic] he says." (Notes of testimony, 6/28/94 at 13.) Furthermore, the trial court's decision to allow the Commonwealth to ask leading questions preceded testimony by the Commonwealth's expert. (*Id.* at 33–41.) In addition, as this court stated in *Tavares, supra,* even where the victim was able to communicate in full sentences by use of a "speak and spell," the trial court did not abuse its discretion by allowing the

victim to respond to leading questions where answers on the "speak and spell" were time-consuming and difficult. *Tavares, supra* at 327, 555 A.2d at 204. Therefore, even if appellant's trial counsel had introduced expert testimony that the victim was capable of communicating verbally to some degree, the trial court would not have abused its discretion by allowing the victim to testify through leading questions. Finally, we note that nowhere does appellant indicate that the victim's telling the full story would tend to exculpate him.

██ Appellant's penultimate ineffectiveness issue is that trial counsel should have more effectively cross-examined the victim. In a single paragraph containing no citations to authority, appellant claims that trial counsel should have cross-examined on the element of force, threat of force, or lack of consent. (Appellant's brief at 22–23.) According to appellant, the record contains only "bald assertions" by the victim that appellant performed oral sex on him four times and he did not like it. (*Id.*) Once again, however, appellant does not indicate how cross-examining the victim would have exculpated him.

██ As this court has stated previously, "trial decisions, especially those pertaining to the nature and extent of cross-examination, are matters of style and tactics involving subtle stratagems which ordinarily are within the exclusive province of the trial counsel." *Petras, supra* at 380, 534 A.2d at 487, (citations omitted). Absent any showing that appellant was harmed by counsel's decision not to cross-examine the victim more extensively, we cannot say that trial counsel was ineffective based upon appellant's bald assertion that counsel should have chosen a different strategy.

██ In his final issue, appellant argues that trial counsel was ineffective for failing to interview the other aide, who worked the afternoon shift at the victim's home, and "perhaps" to use him as a witness. (Appellant's brief at 23.) Appellant bases this ineffectiveness claim on the fact that the victim's

mother testified that she first became aware of the incidents at issue when she received a call from this other aide. (*Id.*) Again, however, appellant has failed to set forth any offer of proof as to what this aide's testimony would have been or how it would have tended to exculpate appellant. Nor has appellant indicated that the other aide would have been willing to testify on his behalf. *See Poindexter, supra* at 521, 646 A.2d at 1216. As a result, we find no merit to appellant's final issue.

For the foregoing reasons, judgment of sentence is affirmed, and jurisdiction is relinquished.

POPOVICH, J. concurs in the result.