J-S64037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NOEL LLOYD SMILE | |
| Appellant | No. 161 EDA 2016 |

Appeal from the Judgment of Sentence April 23, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004456-2012

BEFORE: STABILE, J., SOLANO, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:               **FILED AUGUST 23, 2016**

Appellant appeals *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Delaware County following his conviction at a bench trial on the charges of rape by forcible compulsion, burglary, and simple assault.[1]  Appellant alleges the evidence was insufficient to sustain his convictions.  We affirm.

Appellant was arrested in connection with the rape of S.H., and on December 4, 2012, represented by counsel, he proceeded to a bench trial. The trial court has aptly summarized the testimony and evidence presented at trial as follows:

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3502(a)(1), and 2701(a)(1).

*Former Justice specially assigned to the Superior Court.

On May 24, 2012, at approximately midnight, [S.H.] went to sleep in her apartment. . .in Delaware County. (N.T. 12/4/12 p. 26). She was awakened by her upstairs neighbor, Appellant, knocking on her window. He motioned for her to open the outside door for him and she complied. From the hallway, not in her apartment yet, he said: "[O]h, [S.H.], you're playing with me because you know you wants me. You wants me [a] long time and I'm not giving in. . . ." (*Id.* p. 49). [S.H. testified Appellant then] grabbed her throat, shoved her backwards into her apartment and onto a table. (*Id.*). He said, "[S.H.], you—do you know that I should kill you right now." (*Id.*). [S.H. testified Appellant] lifted her up and shoved her into the bedroom onto her bed. (*Id.*). [S.H.] tried to get up and fought Appellant. (*Id.* pp. 50-51). He [went on top of her and] hit her with a closed fist in the face several times. (*Id.* pp. 49-50). He stood her up, [held her by the throat,] removed her clothes, and then removed his own clothes. (*Id.* pp. 51-61). Then, he sat on the bed, [shoved S.H. into a kneeling position,] and forced her to perform oral sex upon him. (*Id.* pp. 66-69). [S.H. testified that she did not want to engage in oral sex with Appellant and] [s]he was crying throughout the ordeal. (*Id.* pp. 69, 74, 75). [S.H. testified she complied with Appellant's demand to perform oral sex because, "I didn't want him to hit me anymore." (*Id.* p. 70)]. [Appellant then] shoved her on the bed and had vaginal sex with her. (*Id.* pp. 73-74). [S.H. testified that she was "crying, praying for her boyfriend to come." (*Id.* p. 74)]. Thereafter, she ran out the back door, called her boyfriend, and then called the police. (*Id.* p. 75).

Patrolman James J. Murray of the Colwyn Borough Police Department testified that he responded to the area of Third and Walnut Streets. . .in the early morning hours of May 24, 2012[,] for a call relating to the sexual assault of [S.H.] [S.H.] was transported to Mercy Fitzgerald Hospital in Darby, Pennsylvania for her injuries. The officer observed "a fresh lump under her left eye." (N.T. 12/5/12 p. 6).

As Officer Murray and a second officer, Officer Croddock, looked for Appellant, at [S.H.'s] residence, they "heard a loud crash towards the rear of the residence." (*Id.* p. 7). They heard a fence rattling and heard somebody hopping a fence. They followed and found Appellant on the ground attempting to hide underneath a bow window. Appellant [had] broke[n] his leg in his attempt to flee the apartment building. (*Id.* pp. 7-8). The

Officer later testified that he believed Appellant rolled off the awning which extended from the second floor, where Appellant's apartment was located. (*Id.* p. 14).

Without the Officers asking questions, Appellant blurted out a denial. [Officer Murray testified,] "When I first came upon [Appellant], his first statement is that he didn't do it. She—that he didn't know why she was saying that. That she doesn't know why he—he doesn't know why she would say that he did it." (*Id.* pp. 9-10). Another Officer, Detective Dave Taylor, who was also on the scene at about [4:00 a.m.], testified that Appellant subsequently consented to a DNA swab and when he was obtaining the swab from Appellant he blurted out: "[S]he knows I didn't do that to her. I don't know why she's doing that to me." (*Id.* p. 19).

Dr. Michael McCollum, an [emergency room] physician at Mercy Fitzgerald, testified that he examined [S.H.] on May 24, 2012. He determined that there was a bruise on her left cheek with an abrasion and there was swelling around the thyroid area and the neck in general. (N.T. 12/4/12 p. 124). The Doctor determined that the injuries he observed were consistent with his interview of [S.H.] When the District Attorney showed Dr. McCollum Exhibit C-10, a photograph of [S.H.] in her hospital bed, and asked him about the freshness of the wound, he testified: "[W]ell they look relatively fresh. There's very little discoloration underneath the skin. The abrasion looks fresh. It has not—a scab has not developed on the skin, so it looks within a few hours old." (*Id.* p. 126). The Doctor also testified to [S.H.'s] entire eye socket being swollen, her cheek being swollen, and her vaginal mucosa being swollen. He testified within a reasonable degree of medical certainty that her vaginal injury was consistent with penetration force. (*Id.* pp. 130-33).

Appellant [testified at trial]. [Specifically, he] testified that he never forced [S.H.] to perform oral and vaginal sex with him, rather the sex was consensual. (12/5/12 pp. 45-82). [Appellant testified that S.H. initiated the encounter, and he denied that he ever grabbed S.H. by the throat or hit her. (*Id.* at 49-79). Appellant testified that, prior to their sexual encounter on May 24, 2012, he and S.H. were friends. (*Id.* at 64-65)].

- 3 -

Trial Court's Pa.R.A.P. 1925(a) Opinion, filed 3/16/16, at 1-3 (footnote omitted).

At the conclusion of the bench trial, the trial court convicted Appellant of the offenses indicated *supra*, and on April 23, 2013, the trial court imposed the following sentence: rape by forcible compulsion-six to twelve years in prison, to be followed by five years of probation; burglary-two to four years in prison, to run concurrently to the sentence imposed for rape by forcible compulsion; and simple assault-two years probation, to run consecutively to the sentence imposed for rape by forcible compulsion. Further, Appellant was found to be a sexually violent predator and subjected to lifetime registration under Megan's Law.

Appellant filed a timely motion for reconsideration of his sentence in which he sought a lesser sentence due to mitigating circumstances, and the trial court denied his motion on May 13, 2013. Appellant did not file a timely direct appeal; however, on January 24, 2014, Appellant filed a timely *pro se* PCRA[2] petition seeking to file a direct appeal *nunc pro tunc*. By order entered on May 1, 2014, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*.

Thereafter, Appellant filed *pro se* correspondence indicating that he did not wish to file a direct appeal; but rather, he wished to have his remaining

_____

[2] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

PCRA claims litigated.  On May 30, 2014, the PCRA court ordered that Appellant's direct appeal rights be reinstated *nunc pro tunc*.  Further, the PCRA court specifically clarified that "in [Appellant's] filing of a *nunc pro tunc* appeal, he is *not* waiving his rights under the [PCRA] and may proceed with his PCRA petition at the conclusion of appellate review of his direct appeal." PCRA Court's Order, filed 5/30/14, at 1 n.1 (italics in original).[3]

Appellant did not file a direct appeal *nunc pro tunc* to this Court; but rather, on April 24, 2015, Appellant filed a *pro se* PCRA petition,[4] which was to be considered a timely first PCRA petition.[5]  The PCRA court appointed counsel to represent Appellant, and counsel averred that previous counsel was ineffective in failing to file a direct appeal *nunc pro tunc* following the

_____

[3] We note that a lower court may modify its order within thirty days if an appeal is not taken therefrom.  42 Pa.C.S.A. § 5505.

[4] Although this petition was docketed on April 29, 2015, we deem it to have been filed when Appellant handed it to prison officials on April 24, 2015. **See Commonwealth v. Chambers**, 35 A.3d 34 (Pa.Super. 2011) (discussing the prisoner mailbox rule).

[5] "This Court has explained that when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes." **Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa.Super. 2013) (citations omitted).  Therefore, in the case at bar, the time for filing a PCRA petition restarted thirty days after the May 30, 2014, order reinstating Appellant's direct appeal rights, and a PCRA petition filed on or before approximately June 30, 2015, will be considered a timely first PCRA petition. **See id.**  The fact Appellant did not timely file a direct appeal *nunc pro tunc* following the entry of the May 30, 2014, order does not alter this analysis and conclusion. **See id.** at 1286 n.3.

PCRA court's May 30, 2014, order. The PCRA court agreed and, thus, by order filed on November 10, 2015, the PCRA court again reinstated Appellant's direct appeal rights *nunc pro tunc*.[6] This counseled appeal followed on January 7, 2016,[7] and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant challenges the sufficiency of the evidence sustaining his convictions. Our standard of review in assessing a challenge to the sufficiency of the evidence is well-settled. "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Garland***, 63

---

[6] Due to counsel's ineffectiveness in failing to file a requested direct appeal *nunc pro tunc* following the PCRA court's May 30, 2014, order, the PCRA court was permitted to again reinstate Appellant's direct appeal rights *nunc pro tunc* via the subsequent timely PCRA petition, which was filed on April 24, 2015. ***See Turner***, ***supra***; ***Commonwealth v. Ousley***, 21 A.3d 1238 (Pa.Super. 2011).

[7] We note that an appeal must be filed within thirty days of the entry of the order reinstating direct appeal rights. Pa.R.A.P. 903(a). However, in this case, the PCRA court specifically provided in its November 10, 2015, order that Appellant had sixty days to file a direct appeal *nunc pro tunc*. ***See*** PCRA Court's Order, filed 11/10/15, at 1. Due to the PCRA court's misstatement of the appeal period, which constitutes a breakdown in the court's operation, we shall overlook the untimeliness of the instant appeal. ***See Commonwealth v. Coolbaugh***, 770 A.2d 788 (Pa.Super. 2001) (declining to quash an appeal where the failure to file a timely appeal was the result of the trial court's misstatement of the appeal period).

A.3d 339, 344 (Pa.Super. 2013). "Any doubts concerning an appellant's guilt [are] to be resolved by the trier of fact unless the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom." *Commonwealth v. West*, 937 A.2d 516, 523 (Pa.Super. 2007). Further, "the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Perez*, 931 A.2d 703, 707 (Pa.Super. 2007).

Here, Appellant was convicted of rape by forcible compulsion under 18 Pa.C.S.A. § 3121(a)(1), which provides, in relevant part, that "[a] person commits a felony of the first degree when the person engages in sexual intercourse with a complainant. . .by forcible compulsion." "[P]enetration, however slight," of the female genitals with the penis is necessary to establish the element of sexual intercourse. 18 Pa.C.S.A. § 3101. Moreover, the Crimes Code defines "forcible compulsion" as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S.A. § 3101. "Something more" than mere lack of consent is necessary to establish "forcible compulsion." *Commonwealth v. Smolko*, 666 A.2d 672, 676 (Pa.Super. 1995). Forcible compulsion is a determination made in each case based on the totality of the circumstances that have been presented to the fact-finder. *See id.* at 675.

Here, Appellant does not dispute that he and S.H. engaged in sexual intercourse on May 24, 2012. However, he contends the record reveals the encounter was consensual and lacking any evidence of forcible compulsion.

In rejecting Appellant's sufficiency of the evidence claim, the trial court determined:

> [S.H.] testified that as she opened the door to her apartment, Appellant grabbed her by the throat, shoved her into the bedroom, punched her, forced her into performing oral sex upon him and then vaginally raped her. Appellant inserted his penis into [S.H.'s] vagina without [her] consent. [S.H.] testified that she did not want to have sex with Appellant. She cried during the ordeal.
>
> [S.H.'s] testimony at trial is sufficient to support a conviction for the charge of Rape by Forcible Compulsion. Appellant grabbing her by the throat, shoving her into the bedroom, and punching her established the use of physical force[.] Based upon [S.H.'s] credible testimony that Appellant forcibly grabbed her throat and with a closed-fist punched her in the face in order to engage in sexual intercourse with her, there was sufficient evidence to sustain the Rape by Forcible Compulsion conviction in this case. Further, Dr. McCollum's testimony as to the physical injuries to [S.H.'s] neck and eye area corroborated her version of the facts. The Doctor testified that the abrasion looked fresh, it didn't have a scab on it, and so it looked within a few hours old. The Doctor also testified to [S.H.'s] entire eye socket being swollen, her cheek being swollen, and her vaginal mucosa being swollen. He testified within a reasonable degree of medical certainty that [S.H.'s] vaginal injury was consistent with penetration by force.

Trial Court's Pa.R.A.P. 1925(a) Opinion, filed 3/16/16, at 9-10.

The record supports the trial court's findings in this regard. Under our standard of review, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences,

we conclude the evidence of Appellant's physical force used in the rape, which resulted in documented bodily injuries to the victim, was more than sufficient to prove forcible compulsion. 18 Pa.C.S.A. § 3101; **Smolko**, **supra**.

Appellant was also convicted of burglary under 18 Pa.C.S.A. § 3502(a)(1), which provides, in relevant part, that:

> A person commits the offense of burglary if, with the intent to commit a crime therein, the person: (1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1).   Relevantly, it is a defense to burglary if the "actor is licensed or privileged to enter."  18 Pa.C.S.A. § 3502(b).

As our Supreme Court has indicated:

> Under Pennsylvania law the crime of burglary is defined as an unauthorized entry with the intent to commit a crime after entry. 18 Pa.C.S.[A.] § 3502; **Commonwealth v. Wilamowski**, 534 Pa. 373, 633 A.2d 141 (1993).  The intent to commit a crime after entry may be inferred from the circumstances surrounding the incident.  This intent may be inferred from actions as well as words. However, actions must bear a reasonable relation to the commission of a crime.

**Commonwealth v. Alston**, 539 Pa. 202, 206-07, 651 A.2d 1092, 1094 (1994) (footnote and citations omitted).   Moreover, the Commonwealth is not required to specify what crime the defendant was intending to commit upon entering the premises.  **See id.**

In the case *sub judice*, Appellant contends the evidence reveals that S.H. gave him permission to enter her residence and that he did not intend

to commit a crime after entry. In rejecting Appellant's sufficiency claim, the trial court stated the following:

> [S.H.] had gone to sleep for the evening but was awakened by Appellant "knocking on [her] window." (N.T. 12/4/12 p. 39). She moved the curtain and saw that it was Appellant, her upstairs neighbor. He gesture[d] for her to open the door. The apartments are configured such that Appellant and [S.H.] can both enter the front door and enter into a common hallway. The common hallway leads to [S.H.'s] apartment door on the first floor and Appellant enters his apartment upstairs, on the second floor. [S.H.] thought that he was locked out of the front door but in fact he was in the common hallway and was trying to enter her apartment. (***Id.*** p. 44). Appellant then said: "[Y]ou better stop playing with me. I know you want me." [S.H. testified that then] "he held [her] by [her] throat." (***Id.*** p. 47). [He] forced his way into her apartment. She testified [on direct examination]:
> > **Q:** Was he still right on the other side of the door or was he in your. . . .
> > **A:** [U]m-hum[.]
> > **Q:** [S]o he was on the other side?
> > **A:** Right.
> > **Q:** And you were right inside your apartment?
> > **A:** Right.
> > ***
> > **Q:** And he grabbed you by your throat?
> > **A:** Right.
> > **Q:** What did he do after he grabbed you by your throat?
> > **A:** He grabbed me by my throat and shoved me in my living room on this table right here [in the photo]. . . .
> > **Q:** So he pushed you backwards[?]
> > **A:** He shoved me, right. And I went on the table.
> (***Id.*** pp. 47-48).
> Here, Appellant entered. . .[S.H.'s] apartment. He entered the apartment with the intent to commit the crime of [r]ape[.] [S.H.'s] apartment was not open to the public. Appellant did not have permission to enter [S.H.'s] apartment, he forced his way into the apartment. Finally, [S.H.'s] apartment was an occupied structure, that was adapted for overnight accommodations (she

testified she was raped in her bedroom) and at the time of the offense [S.H.] was present. . . .

[T]he evidence [reveals] that Appellant gained entrance only by grabbing [S.H.'s] throat and forcing her backwards through the door, [which] he entered only to attack her, and that he never stated to her any reason or purpose for the entry but to attack her[.] [S.H.'s testimony] permitted the fact-finder to infer that Appellant was neither licensed nor privileged to enter the apartment. Therefore, there was sufficient evidence to sustain Appellant's conviction for the charge of [b]urglary.

Trial Court's Pa.R.A.P. 1925(a) Opinion, filed 3/16/16, at 11-13.

The record supports the trial court's findings in this regard. Under our standard of review, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences, we conclude the evidence of Appellant's use of physical force upon S.H. in order to gain entry into her apartment during the evening hours is sufficient to sustain Appellant's conviction for burglary. 18 Pa.C.S.A. § 3502(a)(1). Contrary to Appellant's assertion, the evidence sufficiently establishes that Appellant intended to commit a crime (rape) when he entered S.H.'s apartment and he was not given permission to enter the apartment. Although Appellant would have us view the evidence in the light most favorable to him, and accept his version of events, such is not the appropriate standard of review. **Garland**, **supra**.

Finally, Appellant was convicted of simple assault under 18 Pa.C.S.A. § 2701(a)(1), which provides that "[e]xcept as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily

- 11 -

injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

> Furthermore, it is axiomatic that simple assault does not require a victim to suffer actual bodily injury. The attempt to inflict bodily injury may be sufficient. This intent may be inferred from the circumstances surrounding the incident if a specific intent to cause bodily injury may reasonably be inferred therefrom.

*Commonwealth v. Polston*, 616 A.2d 669, 679 (Pa.Super. 1992) (citations omitted).

In the case *sub judice*, Appellant contends the evidence reveals that S.H. received the injuries at issue from a physical altercation with her boyfriend, and not from any incident occurring between her and Appellant. In rejecting Appellant's claim, the trial court indicated the following:

> Here, Appellant hit [S.H.] in the face with a closed fist. (N.T. 12/4/12 pp. 49-50). [S.H. testified that] ["[h]e] shoved me on the bed and then went over me, came over me, and then hit me twice in my face again." She was required to go to the hospital to seek treatment for her injury. Dr. McCollum, the [emergency room] physician, described her injury: "[T]he area around her left eye is swollen and bruised and there's an abrasion beneath her left eye. Her upper eyelid here is also— appears to be bruised." (*Id.* p. 130). He continued: "[T]he entire eye socket is swollen and her check. . . is also swollen there, too." (*Id.* p. 130).

Trial Court's Pa.R.A.P. 1925(a) Opinion, filed 3/13/16, at 14.

The record supports the trial court's findings in this regard. Under our standard of review, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences,

we conclude the evidence establishes that S.H. suffered actual bodily injury as a result of Appellant's assault upon her. 18 Pa.C.S.A. § 2701(a)(1). Thus, the evidence is sufficient to sustain Appellant's conviction for simple assault on this basis.

For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2016