J-S05006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALBERT VICTOR RAIBER, | |
| Appellant | No. 1315 MDA 2016 |

Appeal from the PCRA Order Entered August 3, 2016
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001524-2012

BEFORE:  BENDER, P.J.E., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 28, 2017**

Appellant, Albert Victor Raiber, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  After careful review, we affirm.

The PCRA court summarized the pertinent procedural and factual history of this case as follows:

> On January 17, 2013, [Appellant] was convicted by a jury of his peers of Involuntary Deviate Sexual Intercourse, Indecent Assault, Indecent Exposure, Corruption of a Minor, [multiple] Simple Assaults and False Imprisonment.  Attorney Christopher L. Reibsome represented [Appellant] through trial.  On July 29, 2013, [Appellant] was determined to be a Sexually Violent Predator (SVP), given a lifetime Megan's Law registration requirement, and was sentenced to an aggregate incarceration term of twenty-nine (29) years and three (3) months to seventy-two (72) years.  **See** [N.T.] SVP Hearing and Sentencing,

---

[*] Retired Senior Judge assigned to the Superior Court.

7/26/[]13, at 36. On August 8, 2013, [Appellant] filed a Post-Sentence Motion challenging two counts of his sentence that were based on a previous conviction. This [c]ourt granted [Appellant's] Post-Sentence Motion on December 18, 2013[,] and resentenced [him] to an aggregate incarceration term of sixteen (16) and one half years to forty-six (46) and one half years. **See** [N.T.] Resentencing, 12/18/[]13, at 5.

On January 17, 2014, [Appellant] filed a Notice of Appeal. [He] filed his Concise Statement of Matters Complained of on Appeal on February 10, 2014. On March 6, 2014, this [c]ourt, by Opinion and Order, requested that the Superior Court dismiss the appeal. The Superior Court affirmed this [c]ourt's judgment of sentence on September 4, 2014. **See Commonwealth v. Raiber**, [107 A.3d 218] (Pa. Super. ... 2014) [(unpublished memorandum)].

[Appellant] initially filed the present Post Conviction Relief Act (PCRA) Petition on July 9, 2015. Attorney Mark Bayley was ultimately appointed [as Appellant's] PCRA counsel on August 27, 2015. This [c]ourt granted two motions extending [Appellant]'s deadline to file an amended PCRA Petition on October 16, 2015 and December 18, 2015. [Appellant] timely filed an Amended PCRA Petition on January 14, 2016, as well as addendums to the Petition on February 2, 2016 and February 29, 2016. [A] [h]earing on the Petition occurred on March 3, 2016 at which time the [c]ourt directed the parties to file briefs. The Commonwealth and [Appellant] filed timely briefs on March 31, 2016 and April 11, 2016, respectively. ...

## BACKGROUND

The above-captioned charges arose out of allegations of a pattern of sexual abuse that occurred in December [of] 2011. At trial, the Commonwealth first called the victim, J.W.

J.W. testified that, in December 2011, he befriended another boy named N.U. N.T. Trial, 1/16/13, at 40. J.W. was twelve years-old at the time. **Id.** The two boys spent a lot of time together over the 2011 Christmas break. **Id.** at 39-40. J.W. went to N.U.'s home on fi[ve] or six occasions, spending the night on three or four occasions.[10] **Id.** at 43, 75. At the time, N.U. lived with [Appellant], his grandfather. **Id.** at 41-42. Nancy Raiber ([Appellant]'s wife), Beth Leevy ([Appellant]'s daughter), Brian Leevy (Beth's husband), Earl Brown (Beth's brother), and

Melanie Oreck (Brown's fiancé and N.U.'s mother) also lived in the home. *Id.* at 183, 185, 187-88.

[10] Defense witness, Beth Leevy[,] testified that J.W. spent the night on two occasions and came over once or twice before then. *Id.* at 186.

The home itself was a small, three bedroom, single-wide trailer. *Id.* at 47, 78, 187, 193, 201. The trailer included, in sequence of proximity to the front door, the living room, the kitchen, and a hallway leading to two bedrooms, the bathroom, and the master ([Appellant]'s) bedroom. *Id.* at 47.

J.W. identified the [Appellant] at trial. *Id.* at 42. He testified that he spent time with [Appellant] when N.U. was not around. *Id.* J.W. and [Appellant] watched movies in [Appellant]'s bedroom alone[11] and went shopping on occasion. *Id.* at 42-43. J.W. testified that [Appellant] shut and sometimes locked his bedroom door while the two watched movies in the [Appellant]'s bedroom. *Id.* at 82. J.W. went on to testify about a number of occasions on which [Appellant] smacked or sexually abused him.

[11] J.W. conceded on cross examination that people came in and out of [Appellant]'s bedroom when he watched movies with [Appellant], but testified that he and [Appellant] were, on ocassion, alone for a period of time. *Id.* at 78 - 79. Beth Leevy testified that her husband, Brian, and brother, Earl Brown, were running back and forth into the bedroom watching the movie with J.W. and [Appellant]. *Id.* at 186.

J.W. testified that on approximately six occasions, [Appellant] smacked his rear end with a stick, paddle, belt, whip or his hands. *Id.* He also stated that [Appellant] pinched his rear end on a few occasions. *Id.* at 66. J.W. testified that on more than one occasion, while J.W.'s pants and underwear were pulled down, [Appellant] bent J.W. over his knee and smacked his rear end. *Id.* at 61. The smacking resulted in bruising or scratching. *Id.*

J.W. described, in detail, one occasion on which [Appellant] tied J.W.'s hands and feet to the bedframe with rope and hit J.W. with a paddle, belt and whip. *Id.* at 53-55. J.W. stated that on another occasion, [Appellant] handcuffed J.W.'s hands to [Appellant]'s bed and smacked J.W. *Id.* at 55-57. J.W. identified a photograph of the belt, paddle, whip, handcuffs

and rope as the items that [Appellant] used to smack or restrain J.W. *Id.* at 74-75.

J.W. testified that the [Appellant] once drove him and one of [Appellant]'s friends[12] to the video game store, GameStop. *Id.* at 62. J.W. stated that [Appellant] dropped the friend off in front of GameStop and drove behind the store. There, [Appellant] smacked J.W. on the rear end while J.W. was face down on the passenger seat with his pants, but not underwear, pulled down. *Id.* at 63-64.

[12] It appears that [Appellant]'s "friend" was his stepson, Daniel Brown, who testified that he went with [Appellant] and J.W. to GameStop on one occasion. *Id.* at 177-80. Daniel Brown is also referred to as "Jay[."] *Id.* at 204.

J.W. testified that [Appellant] rubbed, licked and sucked his penis on one occasion. *Id.* at 58-59. He testified that [Appellant] once entered the bathroom while J.W. was showering and washed J.W.'s entire body, including his groin area and buttocks, with a "spongy washcloth[."] *Id.* at 50, 59-60. J.W. stated that [Appellant] dried him off after the shower, rubbing a towel in a painful manner in between his legs. *Id.* at 60-61. J.W. testified that, on another occasion, [Appellant] instructed J.W. to bring him soap while [Appellant] was in the shower. J.W. did so. He saw [Appellant]'s side and saw that [Appellant] was nude. *Id.* at 65.

Following J.W.'s testimony, the Commonwealth called J.W.'s mother and stepfather, forensic interviewer Kim Duffy, Pennsylvania State Trooper Nathaniel Lieberum, Fulton County (PA) Chief Probation Officer Dan Miller, and Pennsylvania State Trooper Courtney Pattillo.

J.W. reported the allegations of abuse and showed bruising to his parents on December 31, 2011. *Id.* at 83, 96-97. J.W.'s mother called the Pennsylvania State Police to report the allegations that same day. *Id.* at 98. The family met with Pennsylvania State Trooper Courtney Pattillo at the State Police barracks on January 2, 2012. *Id.* at 149. Trooper Pattillo interviewed the parents and referred the family to the Children's Advocacy Center for a forensic interview. *Id.* at 149-50. On January 9, 2012, forensic interviewer, Kim Duffy, interviewed J.W. about the allegations of abuse. *Id.* at 101, 124.

Kim Duffy testified that she did interview J.W. regarding the allegations on January 9, 2012. *Id.* at 124. Trooper Pattillo observed the interview via closed-circuit TV. *Id.* at 121-24. Duffy confirmed that the interview recording that the Commonwealth played for the jury was a fair and accurate depiction of her January 9, 2012 interview of J.W. *Id.* at 126.

Trooper Pattillo identified the [Appellant] and testified that he interviewed [him] on January 10, 2012. *Id.* at 152-53. With the assistance of his initial report, Trooper Pattillo testified about his initial meeting with [Appellant]. Trooper Pattillo testified that he asked [Appellant] about each of the six incidents that J.W. disclosed in his forensic interview the day before. *Id.* at 156. Trooper Pattillo stated that [Appellant] admitted to spanking J.W. in his bedroom and holding hands with the boy. *Id.* at 156-58. Trooper Pattillo testified that [Appellant] denied having ever gone to GameStop with J.W. and denied performing oral sex on the boy. *Id.* at 157-158.

Trooper Pattillo then discussed a January 12, 2012 search warrant to search the contents of [Appellant]'s trailer. *Id.* at 161. Trooper Pattillo testified that he recovered several pieces of physical evidence from [Appellant]'s bedroom. *Id.* at 162. Those items included a whip found in a bedroom closet, two sets of hand cuffs found in different closets, two sets of ropes found tied to the legs of [Appellant]'s bed and another rope found in a travel bag, a black leather belt, and a black leather paddle. *Id.* at 164-67. Trooper Pattillo arrested [Appellant] that day. *Id.* at 170.

Trooper Lieberum testified to interviewing [Appellant] in 2005 and ultimately charging him with simple assault, corruption of minors and indecent exposure. *Id.* at 135-40. Trooper Lieberum further testified to [the] basis for the 2005 charges: [Appellant]'s admission to striking two naked children with a belt, undressing himself and ordering a child to strike him, and lying in bed nude with a child and hugging him. *Id.* at 138.

Chief Miller testified that, in a pre-sentencing investigation interview, [Appellant] made the same admissions he made to Trooper Lieberum regarding the 2005 incidents. *Id.* at 143-46. [Appellant] ultimately pled guilty to corruption of minors as a result of the charges. *Id.* at 144.

Attorney Reibsome's strategy at trial was "essentially - this could have never happened because everybody was around the

child." N.T. PCRA Hearing, 3/3/16. Attorney Reibsome first called [Appellant]'s stepson, Daniel Brown, to testify. Brown testified that he went to GameStop with [Appellant] and J.W., the three got out of the car at approximately the same time, and entered the store together. N.T. Trial, 1/16/13, at 176-77. Brown further testified that nothing inappropriate happened while he was in the car. *Id.* at 178.

Attorney Reibsome next called [Appellant]'s daughter, Beth Leevy.[13] Leevy testified that she was living in [Appellant]'s home in December 2011 when J.W. spent time there. *Id.* at 184. She testified that she was unemployed, and was present in the home "24/7" when J.W. was home, not even leaving to run errands. *Id.* at 184-85. Leevy stated that people w[]ere always in the home and that J.W. was never home alone with [Appellant]. *Id.* at 188. Leevy testified that [Appellant] did help J.W. with his homework in [Appellant]'s bedroom. *Id.* at 186. She further testified that J.W. watched movies in [Appellant]'s bedroom with him but Leevy's husband and brother "were running back and forth to that room watching movies with them." *Id.* Leevy stated that she did not witness anything inappropriate. *Id.* at 188.

[13] [Appellant] and his then-wife were awarded custody of Leevy when she was 15 months old. *Id.* at 183.

Leevy also testified to the physical makeup of the home stating that it was a small, single-wide trailer. *Id.* at 187, 193. She testified that the distance from the living room to the master bedroom is about 10 feet. *Id.* at 187. She stated that the walls are "paper-thin" and that most noises can be heard through the walls.[14] Leevy did not recall hearing any noises from the master bedroom while J.W. and [Appellant] were in there. *Id.* She further stated that had she heard strange noises from the bedroom, she would have gone back there. *Id.* at 194.

[14] Conversely, J.W. testified that you couldn't really hear voices traveling through the walls. *Id.* at 78.

Finally, Attorney Reibsome called [Appellant]'s wife, Nancy Raiber. Raiber testified that she was living with [Appellant] in the relevant time period. *Id.* at 196-97. She stated that she was unemployed and home the entire time J.W. was there. *Id.* at 198-99. Raiber testified that J.W. took a shower at the home on one occasion and she did not see [Appellant] go into the shower with him. *Id.* at 199.

Raiber testified that the [Appellant] and J.W. were alone together very few times, "[j]ust long enough for him to go down and pick up (Daniel Brown)." *Id.* She stated that she never saw anything inappropriate happening when J.W. was at the home. *Id.* at 200.

Raiber also testified to the physical makeup of the home stating that it was a three-bedroom, single-wide trailer. *Id.* at 201. She stated that the walls were constructed of dry wall and that persons in the home can hear what is going on in other rooms. *Id.* at 200-01. Raiber did, however, testify that a person would not necessarily hear a muffled cry unless he or she was at the bathroom right next to the bedroom. *Id.* at 203.

In his closing argument, Attorney Reibsome conceded that [Appellant] committed simple assault, spanked J.W., and that "there was probably false imprisonment[."] N.T. Trial, 1/17/13, at 6, 9. He argued that the oral sex allegation was inconsistent with the allegations of spankings and inconsistent with [Appellant]'s charges. *Id.* at 7-10. Attorney Reibsome noted that J.W. called [Appellant]'s home to visit after the alleged oral sex incident, and argued that such unprompted action on J.W.'s part did not make sense if J.W.'s version of the event was to be believed. *Id.* at 7-8.

Attorney Reibsome stated that J.W. was "far from an innocent person" and claimed that J.W. embellished his story because he did not want to return to [Appellant]'s home. *Id.* at 20, 8. He argued that Ms. Duffy's testimony, and the forensic interview itself, was biased because Ms. Duffy's job to elicit testimony to be used in trial. *Id.* at 14-15. He argued that because no oral sex occurred, [Appellant] was neither guilty of involuntary deviate sexual intercourse nor corruption of minors. *Id.* at 18-19.

Ultimately, the jury found [Appellant] guilty on all charges.

PCRA Court Opinion (PCO), 8/26/16, at 1-8 (some footnotes omitted).

Following a hearing, the PCRA court denied Appellant's petition by order dated August 3, 2016. On August 9, 2016, Appellant filed a timely notice of appeal, and then filed a court-ordered, Pa.R.A.P. 1925(b)

statement on August 25, 2016. The PCRA court issued its Rule 1925(a) opinion on August 26, 2016.

Appellant now presents the following questions for our review:

1. Did the trial court err in denying … Appellant's Amended Motion for [PCRA] Relief where … Appellant's trial counsel was ineffective for failing to elicit testimony from Nancy Raiber that she had reason to believe that [J.W.] had snooped through a dresser drawer in … Appellant's bedroom?

2. Did the trial court err in denying … Appellant's Amended Motion for [PCRA] Relief where, in conjunction with the first ineffective assistance of counsel issue set forth above, … Appellant's trial counsel was additionally ineffective for failing to interview and call [N.U.] - who could have testified at trial that he was present in … Appellant's home, along with others, at the time [J.W.] showered there, that … Appellant did not enter the bathroom while [J.W.] showered, that it would not have been possible for … Appellant to have entered the bathroom while [J.W.] showered without [N.U.'s] observing … Appellant['s] doing so, and that … Appellant had never made sexual or otherwise inappropriate advances on him - and for failing to elicit testimony from Beth Leevy that she was present in … Appellant's home, along with others, at the time [J.W.] showered there, that … Appellant did not enter the bathroom while [J.W.] showered, and that it would not have been possible for … Appellant to have entered the bathroom while [J.W.] showered without her noticing?

Appellant's Brief at 8.

This Court's standard of review regarding an order denying a petition under the PCRA is as follows:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.

- 8 -

> This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

We must begin by briefly addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Here, it is undisputed that Appellant's PCRA petition was timely. On September 4, 2014, this Court affirmed Appellant's judgment of sentence. Appellant filed his *pro se* PCRA petition on July 9, 2015, well within the one-year time limitation set forth in 42 Pa.C.S. § 9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final...."). Accordingly, the PCRA court had jurisdiction to entertain Appellant's PCRA petition, and we have jurisdiction to entertain Appellant's appeal.

Each of Appellant's claims concerns whether his trial counsel, Attorney Reibsome, provided ineffective assistance of counsel (IAC). In order to successfully establish an IAC claim, Appellant is required

> to show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and, (3) that, but for the errors and omissions of

- 9 -

counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Kimball***, 724 A.2d 326, 333 (Pa. 1999).

Appellant's first IAC claim posits that Attorney Reibsome was ineffective for failing to elicit testimony from Nancy Raiber, Appellant's wife, regarding her suspicion that the victim snooped through their dresser drawer. Essentially, Appellant contends that such testimony would have offered an alternative explanation for the victim's familiarity with the sex toys discovered by police in Appellant's bedroom, to counter the inference that such knowledge could have only derived from Appellant's having performed the alleged criminal acts against the victim. The PCRA court dismissed this claim as having failed to prove any of the three prongs of the IAC test enumerated in ***Kimball***. However, we need not address each prong in our review as "[f]ailure to prove any prong of this test will defeat an ineffectiveness claim." ***Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014).

We begin with the arguable merit prong of Appellant's first IAC claim. At the PCRA hearing, Nancy Raiber was asked what she "knew about [J.W.] snooping around in [her] bedroom...." N.T. PCRA Hearing, 3/3/16, at 33. Ms. Raiber answered:

> Um, I went to get a hanky out of my dresser drawer and I noticed my dresser drawer was open, which had all my lingerie in it. And, at that time, I asked [Appellant] ... "Why is my dresser drawer open?" He sa[id], "I have no idea." So, I closed my dresser drawer and I left the room, went back out to the living room to where my computer was.

- 10 -

*Id.* She was then asked why she suspected J.W. had looked through the drawer. She said that at that time she noticed the open drawer, J.W. was with Appellant in the room, doing his homework and "reading out of the Bible with Appellant." *Id.* at 34. She suggested that J.W. was alone at some point because Appellant had used the bathroom. *Id.* She also stated that all of the sex toys in question were located in the closet, not in her lingerie drawer. *Id.*

In rejecting this claim as lacking arguable merit, the PCRA court stated that the allegation of ineffectiveness "was factually inaccurate" because, even if the jury had credited Ms. Raiber's PCRA hearing testimony, it did not establish any link to the location where the sex toys were kept, as confirmed both by Mr. Raiber's testimony and the police's search which uncovered those items. PCO at 12. The court went on to opine that "[t]here is no factual support for [Appellant's] proposed theory" that J.W. 'must have' snooped through the closet if he snooped through Ms. Raiber's dresser drawer. *Id.* Indeed, as cited by the PCRA court, Ms. Raiber specifically testified that she had no reason to believe that anyone had 'snooped' through any other area of the bedroom. *See* N.T. PCRA Hearing at 35-36.

Appellant counters that the PCRA court "seems to assume that the bedroom closet was located in some other part of the universe, rather than right next to the bedroom drawer. The … court's position wrongly presumes that the defense cannot use simple circumstantial evidence just as effectively as the prosecutor." Appellant's Brief at 29. We disagree with

Appellant's characterization of this testimonial evidence. Ms. Raiber did not observe J.W.'s snooping through her lingerie drawer. She merely testified that it was open. Moreover, she testified that nothing was missing from the drawer. N.T. PCRA Hearing at 36. Ms. Raiber did not even indicate that anything was out of order in the drawer when she found it open. She also specifically testified that she had no reason to suspect that anyone had 'snooped' through her bedroom closet. *Id.* Given these facts, we conclude, as did the PCRA court, that Appellant's attempt to connect this essentially trivial fact (an open lingerie drawer) to the otherwise unsubstantiated allegation that J.W. snooped through an entirely different location, albeit a nearby one, does not cross the threshold of what constitutes an arguably meritorious claim. It is merely conjecture built on a foundation of rote speculation. While this Court might have been tempted to agree that actual evidence (direct or circumstantial) of J.W.'s snooping could have supported the secondary inference of snooping in the closet, given the close proximity of the two locations, we simply reject the notion that Ms. Raiber's suspicion, based merely on an open drawer, was competent circumstantial evidence to that effect. Accordingly, we conclude that the PCRA court did not err in determining that Appellant's first IAC claim lacked arguable merit. The court's decision and analysis were free of legal error and supported by the facts of record. As noted above, we therefore need not address the remaining prongs of the IAC test for this claim.

Next, Appellant presents two separate, but partially-related IAC claims in the second question he presents for our review. We will address each in turn. First, Appellant asserts that Attorney Reibsome was ineffective for failing to call N.U. to testify for the defense. N.U. testified that he was willing to testify at Appellant's trial that 1) Appellant did not enter the bathroom on the occasion that J.W. took a shower in the Raiber home, and that it was not possible for Appellant to entered the bathroom unobserved; and 2) that N.U. never observed Appellant engage in sexually inappropriate acts with himself, J.W., or anyone else. Appellant's Brief at 8. This sub-claim itself can be separated into multiple claims; however, each is governed by the same standard. "[I]n order to obtain relief on the basis of an ineffectiveness claim premised upon counsel's failure to call witnesses, [A]ppellant must establish that: 1) the witness existed; 2) the witness was available; 3) counsel knew or should have known about the witness; 4) the witness was prepared to cooperate and testify at trial; and 5) absence of the testimony prejudiced appellant. *Commonwealth v. Smolko*, 666 A.2d 672, 679 (Pa. Super. 1995). The first four parts of the *Smolko* test are not in dispute in this appeal; N.U. existed, he was available to testify, counsel knew about him, and N.U. was willing to testify at Appellant's trial. The remaining prejudice element of the *Smolko* test is, in essence, the same as the three-pronged IAC test set forth in *Kimball*.

The PCRA court determined that Appellant's IAC claims regarding N.U. are of arguable merit. We disagree with this analysis in one respect: N.U.'s

testimony that Appellant did not engage or attempt to engage in sexually inappropriate acts with N.U., or with anyone other than J.W., was simply not relevant to the issues in dispute at Appellant's trial. N.U. was not a victim in this case. Accordingly, testimony concerning Appellant's relationship with him was, at best, improper character testimony. *See Commonwealth v. Van Horn*, 797 A.2d 983, 988 (Pa. Super. 2002) (holding that testimony by a defendant's relatives that the defendant had not "sexually abused any of them … does not constitute proper character testimony" because it was not testimony "regarding [the defendant's] 'general reputation in the community.'"). As such, this aspect of Appellant's claim lacks arguable merit. As to the remaining sub-parts of Appellant's claim, regarding trial counsel's failure to call N.U. to testify, we agree with the PCRA court's assessment that arguable merit exists, with respect to trial counsel's failure to call N.U. to testify about the shower incident, and the fact that he never observed Appellant abusing J.W. These aspects of N.U.'s testimony would have been clearly relevant to the issues under consideration at Appellant's trial.

Therefore, we now turn to the reasonable basis prong. The PCRA court found that Attorney Reibsome had a reasonable basis to decline to call N.U. to the stand in Appellant's defense:

> Attorney Reibsome testified that, while he does not recall interviewing N.U., he does recall discussing with [Appellant]'s family whether N.U. should testify due to his age and either behavioral or mental health issues. N.T. PCRA Hearing, 3/3/16, at 13. Attorney Reibsome recalled being uncomfortable "putting

an unknown on the stand" and recalled coming to an agreement with [Appellant]'s family that he would not call N.U. to testify. *Id.* at 14. Attorney Reibsome further testified that he had Nancy Raiber testify specifically to the shower incident. *Id.*

N.U. testified that he suffers from anxiety and bipolar disorder and has been medicated for those conditions almost all of his life. *Id.* 43 -44. He further stated that his anxiety issues arise when he is in a small area with a lot of people, and that he deals with the anxiety by trying to remain calm and fighting it out the best he can. *Id.* at 44.

We find that, due to N.U.'s age and medical issues, Attorney Reibsome had a reasonable basis in deciding not to call N.U. to testify. As such, [Appellant]'s claim fails the second … prong [of the IAC test].

PCO at 17.

Appellant argues that "[there] are no facts in the record to suggest that the defense had anything to lose by calling [N.U.] to testify and … the defense had much to gain. Trial counsel should not have relied on third party opinions under such circumstances[,]" and "in the absence of an interview," counsel's "statement that [N.U.] was an 'unknown,' … does not support his decision to forego his testimony." Appellant's Brief at 33.

We note that Appellant did not present a claim to the PCRA court that counsel was ineffective for failing to *interview* N.U. **See** Appellant's Amended PCRA Petition, 1/14/16, at 2 ¶4(b). "[T]he question of failing to interview a witness is distinct from failure to call a witness to testify." **Commonwealth v. Dennis**, 950 A.2d 945, 960 (Pa. 2008). Accordingly, we must deem this issue waived. **See** Pa.R.A.P. 302(a) ("Issues not raised

in the lower court are waived and cannot be raised for the first time on appeal.").[1]

As to Appellant's remaining argument concerning Attorney Reibsome's basis for not calling N.U., Appellant baldly asserts that the defense had 'nothing to lose,' by offering N.U.'s testimony; however, Attorney Reibsome expressed concerns with putting a mentally unstable individual on the stand. Appellant offers no legal authorities suggesting that this strategy for not calling N.U. to testify was improper, or that it is trumped by an alternative 'nothing to lose' strategy. Moreover, we cannot view Attorney Reibsome's decision in a vacuum. He testified that his decision was also informed by the fact that he already had a witness to testify regarding the shower incident, as well as to Appellant's conduct around J.W., as Mrs. Raiber claimed to have been always present when J.W. was at their home. N.T. PCRA Hearing at 13-14.

Our Supreme Court has stated:

> "With regard to 'reasonable basis,' the PCRA court 'does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis.'"

---

[1] Even if this fact was not known to Appellant when he filed his amended PCRA petition, he failed to seek to amend his petition to add such a claim after testimony establishing the factual basis for it arose during the course of the PCRA hearing. Moreover, Appellant did not raise this claim appropriately in his brief, as it does not appear in his statement of the questions presented, but instead is offered in the middle of his argument pertaining to trial counsel's failure to call N.U. to testify.

> ***Commonwealth v. Bardo***, ... 105 A.3d 678, 684 (2014)[].
> "Where matters of strategy and tactics are concerned, '[a]
> finding that a chosen strategy lacked a reasonable basis is not
> warranted unless it can be concluded that an alternative not
> chosen offered a potential for success substantially greater than
> the course actually pursued.'" ***Commonwealth v. Spotz***, 624
> Pa. 4, 33, 84 A.3d 294, 311–12 (2014)[].

***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015).

Given these circumstances, as well as Appellant's failure to offer legal authority to the contrary, we are constrained to conclude that the PCRA court did not err as a matter of law in determining that Attorney Reibsome had a reasonable basis to decline to call N.U. to testify on Appellant's behalf. We also conclude that the facts of record adequately support the basis for that decision. Appellant's 'nothing to lose' theory does not, in our view, constitute an alternative strategy offering "a potential for success ***substantially*** greater than the course actually pursued." ***Id.*** (emphasis added). It merely offers an alternative with *some* potential for success, no matter how slight. Accordingly, Appellant is not entitled to relief on this aspect of his second IAC claim.

Finally, Appellant contends that Attorney Reibsome was ineffective for failing to elicit testimony from Beth Leevy that she was present when J.W. showered in Appellant's home, that Appellant did not enter the bathroom during that time, and that it would have been impossible for him to do so unnoticed. The PCRA court accepted that there was arguable merit to this claim, and that Attorney Reibsome lacked a reasonable basis for failing to elicit such testimony from Ms. Leevy. PCO at 18-19. We ascertain no

reason to dispute those determinations, and we are not being asked to do so by the parties in this case.

However, the court did determine that Appellant was not prejudiced by trial counsel's omission in this regard, and so we move directly to consideration of the third IAC prong. The PCRA court reasoned:

> [Appellant] argues that Attorney Reibsome's failure to question Beth Leevy about the shower incident, particularly coupled with N.U.'s testimony of the same, "would have enabled the defense to argue that four witnesses, including another child, directly contradicted J.W.'s claims on the only two alleged assaults that could be connected with precise times." [Appellant]'s 4/11/16 Memorandum in Law, at 30. [Appellant] alleges that "[t]here is a reasonable probability that the inclusion of this cumulative testimony would have changed the result of the trial." *Id.*

> Cumulative testimony is generally unnecessary to avoid prejudice in an ineffective assistance of counsel claim. However, the cumulative prejudicial effect of multiple omissions by trial counsel, even where each omission does not satisfy the prejudice prong alone, may warrant a new trial. *See Commonwealth v. Champney*, 65 A.3d 386 (Pa. 2013); *Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009). In *Champney* and *Johnson*, however, the multiple ineffective assistance of counsel claims satisfied the two initial [IAC] prongs but could not satisfy the prejudice prong alone. Here, however, we have dismissed [Appellant]'s claim regarding N.U.'s testimony because Attorney Reibsome had a reasonable basis in deciding not to call N.U. to testify. Consequently, the rule established in *Champney* is inapplicable here.[18] Thus, [Appellant]'s instant claim stands alone. We find that Beth Leevy's testimony regarding the shower incident is cumulative as Nancy Raiber testified to the shower incident at trial.

> [18] Furthermore, N.U. and Beth Leevy provided contradictory testimony as to the shower incident. N.U. testified that he was in [Appellant]'s bedroom with [Appellant] when J.W. showered whereas Leevy testified that everyone was in the living room. *Id*. at 39-40, 49.

- 18 -

Furthermore, Leevy's testimony called into doubt Mrs. Raiber's testimony regarding the shower incident. Leevy testified that Mrs. Raiber likely would not have been able to see the bathroom door due to where she was seated in the living room. N.T. PCRA Hearing, 3/3/16, at 49.

Accordingly, we find that [Appellant] suffered no prejudice as a result of Attorney Reibsome's failure to question Beth Leevy about the shower incident. As such, [Appellant]'s claim fails the third [IAC] prong.

PCO at 20-21 (some internal citations omitted).

We agree with the PCRA court. Leevy's proposed testimony was cumulative of Mrs. Raiber's testimony regarding the shower incident. Accordingly, the prejudice suffered by Appellant by the omission of that testimony must have been less than had no such testimony been offered at all. Moreover, whatever benefit Appellant would have reaped from this additional, cumulative testimony could have easily been undermined by the conflicts in the testimony between Mrs. Raiber and Ms. Leevy. Indeed, it is not inconceivable that such a conflict could have harmed Appellant more than he gained from the additional testimony.

To prove prejudice under the third prong of the IAC test, Appellant must show that "there is a reasonable probability that the outcome of the proceedings would have been different" absent counsel's error. *Kimball*, 724 A.2d at 333. Appellant's argument simply fails to convince us that the presence of Ms. Leevy's proposed testimony could have produced such a reasonable probability, given its cumulative nature, and because it could have actually undermined the testimony to the same effect actually elicited at trial. Accordingly, we conclude that the PCRA court's determination that

- 19 -

Appellant was not sufficiently prejudiced by counsel's omission to warrant relief is free of legal error and supported by the record.

Order *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017